MARIE E. ZIESEL, complainant and respondent,

*v.*

WILLIAM ZIESEL, defendant and appellant.

[Submitted July 11th, 1921. Decided November 14th, 1921.]

1. A father, unless his parental authority has been taken away by the courts, is the one to decide the extent of the education of his child, beyond what is required and provided by the school system of the state, and is under no *legal* duty to send his son to a boarding school, no matter what his financial circumstances may be.

2. Where the father and mother are divorced, and the custody, maintenance and education of the son have been committed by the court of chancery to the mother, and where the father's annual net income is only $4,500, an order requiring him, against his objection, to pay to the mother $520 annually for the support and maintenance of such sixteen-year-old son, and $980 annually for his board and tuition in a boarding school, is excessive, and will be reversed, in so far as it represents expenses of education in a boarding school rather than in a public high school, in view of the fact that the father believes, with some showing of reason, that attendance at a public high school is adequate and preferable for his son for present purposes, and in view of the further fact that the father has a second wife and daughter to support.

On appeal from an order of the court of chancery advised by Vice-Chancellor Leaming, who delivered orally the following opinion:

"I am a little in doubt. It seems to me that an allowance of $1,500 a year, under all the circumstances, would not be very far from right. That ought to be sufficient to provide for the board of the boy and a fairly liberal expenditure for his education. If $10 a week were allowed for the support of the boy it would be $520, and then if $800 were allowed for the education in addition it would be a total of $1,320, which would be only a little less than $1,500. Eight hundred dollars is cutting down education to a pretty small amount, as charges are made at this time by must colleges, and I do not believe there is any doubt that Dr. Ziesel can afford to pay $1,500 without crippling him. I think that the net income of the doctor is not far from $4,500. I think this item of $2,400 for money borrowed could be excluded from the gross receipts, and in like manner the item of $1,847.29 for repairs and alterations could be excluded from the expenditures, which would leave him, approximately, the amount I stated, $4,500. With that and the expenses he must bear, I should think $1,500 for the support and education of the son would be reasonable. It may not be as much as would be desirable, and it may be more than the doctor cares to pay, but it would not be far from right. In making expenditures for the boy's education the doctor is building a monument for himself that is more desirable even than the pursuits in scientific investigation that he is following; however commendable that research may be, there can be nothing in the nature of a legally-imposed duty—and should be a corresponding pleasure—greater than that of the support of your own issue, and that word 'support' should, in all appropriate circumstances, include appropriate education. I think the doctor, himself, on mature reflection touching the duties of a parent to his offspring, would be inclined to concede that $1,500 a year allowance is not too much. The income of his wife—his first wife—is limited; she might not have anything left after her own year's expenditures are made. I do not think $1,500 is an unreasonable amount. I will

make the allowance. I think it was reasonable to employ an accountant by counsel for complainant, and to make the investigation which was made, and that the expense thus incurred should be paid by the defendant, as well as the master's costs, of course. And I think $75 counsel fee will be proper."

*Mr. Lewis Starr,* for the appellant.

*Messrs. Leap, Sharpless & Way,* for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

This, as will be seen, is an appeal from an order of the court of chancery requiring the appellant to pay for the support, maintenance and education of his minor son, Edward Ziesel.

The facts and circumstances giving rise to the order under review are these:

The parties to the action, Dr. and Mrs. Ziesel, were married January 27th, 1889. Three children were born, of whom Edward, the one concerned here, is the youngest. They were divorced in Pennsylvania December 21st, 1914. No provision was made in that decree for the support and maintenance of Edward. Apparently, the parties removed to Wildwood, New Jersey, and in the early part of 1916 Mrs. Ziesel filed a bill in the court of chancery for the support of Edward, the minor child, and no question was raised as to the jurisdiction of the court. On July 10th of that year a decree was entered in that proceeding awarding the care, custody and education of Edward to Mrs. Ziesel, and requiring Dr. Ziesel to pay $5 per week to Mrs. Ziesel for his support, maintenance and education, and leave was granted by the decree to either party to apply thereafter for such variance or modification thereof as changing circumstances might render equitable and just. In November, 1920, Mrs. Ziesel petitioned for a greater allowance, saying that Edward had attained the age of sixteen years and was a "second year high school student;" that his father's income was from $10,000 to $15,000 per year; that she desired to send the boy to a preparatory school, which

she named, where the board and tuition was $1,000 per year. It was on that petition that the court of chancery made the order now under review requiring Dr. Ziesel to pay to Mrs. Ziesel for the support and maintenance of Edward $10 per week, and an additional sum of $980 annually for his education.

We are of the opinion that such order cannot be sustained.

It appears that Dr. Ziesel is a dentist, having offices in Wildwood, in this state, and in Philadelphia, Pennsylvania; that he is doing much research work in connection with his profession; that prior to the divorce he settled upon Mrs. Ziesel approximately $40,000 of property in Wildwood, from which she has an income of about $2,600 a year, and that the other two children of the marriage are of age and self-supporting. It further appears that after the parties were divorced the doctor married again and has one child by that marriage; and, while he is not living with his second wife, he is obliged to support her and his daughter by that marriage.

The learned vice-chancellor found as a fact, and we think rightly, that the annual net income of Dr. Ziesel was approximately $4,500, out of which, of course, he had to pay for the support of his second wife and his daughter, and also such sum as may be awarded in this proceeding for the support and education of his son Edward.

Now, Dr. Ziesel seems to find no fault with the order so far as it relates to support and maintenance. His objection is to that part of the order relating to allowance for education, and his objection really is to the expense of board and tuition at a boarding school, his contention being that attendance at a high school is adequate and preferable for his son for present purposes. The doctor testifies that he has always insisted upon a public school education for his children; that "this preparatory school [selected by the mother] does not rank as high as the average public high school," and in this connection it is to be noted that he further testifies that Edward had "voluntarily" left another boarding school in which, quite recently, he had been placed by his mother, but whether with or without the consent of his mother does not appear.

It is not questioned that the court of chancery has power to make a proper order touching the education of the son such as "the circumstances of the parties and the nature of the case" shall render "fit, reasonable and just." *Comp. Stat. p. 2035 § 25.*

The order under review seems to be predicated upon some legal duty of a father to send his son to a boarding school if he can do so without "crippling him," and this the vice-chancellor thought the present order would not do, and hence he required an expenditure of one-third of the father's income for the support and education of this one son, made up in large part of boarding school expenses.

But a father is under no *legal* duty to send his son to a boarding school, no matter what his financial circumstances may be. True, many a father does it at a sacrifice to himself and other members of his family, but he does so voluntarily. That may be a commendable thing to do. No doubt the vice-chancellor had such instances in mind. But after all, if a father sees fit to content himself with a common public school and high school education for his son, the law ordinarily will require no more of him. If Edward, the son, were living with his father instead of the mother, no court would compel him to send the son to any boarding school or even a private day school. He would be compelled by statute (*Comp. Stat. p. 4775 § 153*), and those administering it, to educate the child, but the state provides free schools, where all its sons and daughters may be thus educated and the law ordinarily requires no more than this. A father, unless his parental authority has been taken away by the courts, is the one to decide the extent of the education of his child, beyond what is provided by the school system of the state. *Streitwolf* v. *Streitwolf, 58 N. J. Eq. 570.* If the father were dead and the minor son had property, his education would be paid for out of his income under the direction of the court of chancery, on a basis of what was proper and customary for one in his station in life; but that is not this case.

A case somewhat in point is that of *Streitwolf* v. *Streitwolf, supra.* There, in a suit brought by the wife for a limited divorce on the ground of extreme cruelty, alimony *pendente lite* was awarded her. She subsequently applied for additional alimony

*pendente lite,* to enable her to meet the expenses for tuition and books, at a law school, of her son, then in his twentieth year, who lived with her, and was chiefly supported by her. No order had been made giving the custody of the son to either parent. The application was granted, against the objection of the husband, who testified that he thought his son unfitted for the law and wished him to go into business. On appeal to this court it was held that the order giving additional alimony *pendente lite* to enable the wife, against the judgment of her husband, to secure for the son a professional education, should be reversed.

Of course, in the present case, it appears that the father and mother were divorced, and that the custody, maintenance and education of the son had been committed by the court to the mother. But where, as here, it appears that the father's annual net income was only $4,500, we think that an order requiring him, against his objection, to pay to the mother $520 annually for the support and maintenance of such sixteen-year-old son, and $980 annually for his board and tuition in a boarding school, is excessive, in so far as it represents expenses for education in a boarding school rather than in a public high school, in view of the fact that the father believes, with some showing of reason, that attendance at a public high school is adequate and preferable for his son for present purposes, and in view of the further fact that the father has a second wife and daughter to support.

The decree will be reversed and the record remitted to the court of chancery for further proceedings in accordance with the views herein expressed.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—14.