CATHLEEN HARDISTY *v.* GARWIN D. HARDISTY

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

Argued January 8—decision released March 3, 1981

*Thomas F. McDermott, Jr.,* with whom, on the brief, was *Emmet P. Nichols,* for the appellant (defendant).

*Robert D. Houston,* with whom, on the brief, were *Ralph C. Crozier* and *Arnold M. Potash,* for the appellee (plaintiff).

PETERS, J. This is an appeal from the modification of orders of alimony and support. The principal issue is the propriety of an order increasing support to cover expenses arising out of the private secondary schooling of the parties' son.

The marriage between the plaintiff Cathleen Hardisty and the defendant Garwin D. Hardisty was dissolved, on April 3, 1974, at the initiative of the plaintiff upon a finding of irretrievable breakdown. The state referee to whom the matter had been referred, *Hon. John R. Thim,* sitting as the trial court, at that time entered certain orders pursuant to the agreement of the parties. Those orders awarded custody of the parties' two minor children to the plaintiff, and required the defendant to pay lump sum alimony of $20,000, periodic alimony of $125 weekly and support of $45 weekly for each child.

The plaintiff filed, on July 12, 1977, a motion to modify support and alimony, alleging substantial and material changes in circumstances, in particular the son Andrew's admission to the Kent School, a private secondary school for boys, for the following fall. The defendant countered with a motion to modify custody, which ultimately was denied; no appeal has been taken from that denial. The defendant also contested the motion for modification of alimony and support which had, in the meantime,

been amended to allege, as an additional ground for modification, a substantial and material change in the defendant's financial circumstances.

After a full hearing at which the parties presented their evidence, and after a conference with the minor children, the court, *Bieluch, J.,* modified the outstanding orders of alimony and support to: increase alimony from $125 to $225 weekly; increase support for the daughter Laura from $45 to $75 weekly; and increase support for the son Andrew from $45 to $150 weekly. In addition, the defendant was ordered to pay a lump sum of $3000 retroactive support for Andrew, representing half of his Kent School expenses for the previous year. This appeal by the defendant ensued.

The defendant has raised seven claims of error. The first two attack the accuracy of the trial court's finding of facts, while the third attacks the court's conclusions as unsupported by the findings. The fourth claim contests two evidentiary rulings. The fifth, sixth and seventh claims all contest the propriety of the trial court's conclusions that a sufficient change of circumstances had been shown to warrant modification of the support and alimony orders.

## I

The defendant's extensive attack on the trial court's finding of facts proves, on examination, to be, with one exception, groundless. We correct the finding to incorporate the undisputed fact that neither the defendant nor any member of his family had received primary or secondary level education at any private school. The other facts in the defendant's draft findings which the trial court refused to find were either incorporated in other findings which

the court did make, or were not undisputed. The finding is thus not otherwise subject to material correction. *Jennings* v. *Reale Construction Co.*, 175 Conn. 16, 17–18, 392 A.2d 962 (1978); *E & F Realty Co.* v. *Commissioner of Transportation*, 173 Conn. 247, 249, 377 A.2d 302 (1977). The defendant's challenge to the facts as found is equally unpersuasive. In each case, there was evidence before the trial court which, if believed, would have provided an adequate basis for the finding actually made. That is all that is required. *Fricke* v. *Fricke*, 174 Conn. 602, 603, 392 A.2d 473 (1978); *El Idrissi* v. *El Idrissi*, 173 Conn. 295, 298, 377 A.2d 330 (1977).

The defendant has also assigned error to the trial court's conclusions of fact, as distinguished from its findings of fact, with regard to material and substantial changes of the circumstances of the parties and of their children. These claims will be considered below in connection with the defendant's substantive challenges to the trial court's conclusions.

The defendant's evidentiary claims ask us to find error in the exclusion of the answers to two questions posed to the defendant by his own counsel. The first question arose as follows: The defendant's earnings were found to have come in part from his ownership and operation of a restaurant known as the Curtis House. The defendant was asked what the value of this restaurant would be if the lease on the property were no longer in effect. The plaintiff objected that this inquiry was speculative; the plaintiff's objection was sustained and the defendant properly excepted to this ruling. The second question arose out of an inquiry into the defendant's ability to pay for his son's second-

ary education at a private school. The defendant was asked whether he might be unable to pay for a college education for his son in the event that he were required to spend money for a secondary school such as Kent. Again, the plaintiff objected that the question involved speculation and, upon the trial court's ruling that the answer be excluded, the defendant properly excepted. Both of these rulings by the trial court fall within its broad discretionary power to determine the relevancy or remoteness of evidence. *Katsetos* v. *Nolan,* 170 Conn. 637, 649–50, 368 A.2d 172 (1976); *Doran* v. *Wolk,* 170 Conn. 226, 232, 365 A.2d 1190 (1976). There was no error in these evidentiary rulings.

## II

The major thrust of the defendant's appeal is that the trial court erred in concluding that the plaintiff had demonstrated a substantial and unforeseen change in the circumstances existing at the time of the original decree dissolving the marriage between the parties, and that the court abused its discretion in modifying the orders of alimony and support.

The facts found by the trial court that pertain to the modification establish that there was a substantial change in the financial circumstances of the defendant between 1974 and 1978. His gross income in 1978 was two and one-half to three times what it had been previously, and his assets, including the two restaurants he owned, were five times as valuable. Although his 1978 financial affidavit listed considerable indebtedness, most of these debts were interfamily obligations. The 1978 affidavit overstated his expenses, since it did not reveal that a mortgage loan represented a joint indebtedness with his present wife and did not disclose that

some of his listed expenses were paid by his wife. The defendant's salary and benefits were received from the corporations which he owned; he himself set these amounts, and was deterred by federal tax regulations from setting a higher salary. The 1978 affidavit did not disclose that the defendant had the free use of a car for which the defendant's corporation paid gasoline, upkeep and insurance. By contrast, the 1974 financial affidavit of the defendant failed to disclose the ownership of any restaurants, and reported markedly lower income and assets.

There was thus no error in the trial court's conclusion that there had been a sufficient change of circumstances so that the court could properly entertain a motion for modification of alimony and support. Under our statutes and cases, modification may be premised "upon a showing of substantial change in the circumstances of *either* party [to the original decree.]" (Emphasis added.) General Statutes § 46-54 (now § 46b-86);[1] *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172 (1976); *Viglione* v. *Viglione,* 171 Conn. 213, 215, 368 A.2d 202 (1976); see Clark, Domestic Relations § 14.9.

Once a trial court determines that there has been a substantial change in the financial circumstances

[1] "[General Statutes] Sec. 46b-86. (Formerly Sec. 46-54). MODIFICATION OF ALIMONY OR SUPPORT ORDERS AND JUDGMENTS. (a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law.

"(b) In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final

of one of the parties, the same criteria that determine an initial award of alimony and support are relevant to the question of modification. *Sanchione v. Sanchione,* 173 Conn. 397, 401–402, 378 A.2d 522 (1977); see Clark, Domestic Relations § 14.9, pp. 456–57. These require the court to consider, without limitation, the needs and financial resources of each of the parties and their children, as well as such factors as health, age and station in life. General Statutes § 46-52 (now § 46b-82), and § 46-57 (now § 46b-84);[2] *Cummock v. Cummock,* 180 Conn. 218, 221–22, 429 A.2d 474 (1980); *Jacobsen v. Jacobsen,* 177 Conn. 259, 264, 413 A.2d 854 (1979). In making its determination of the applicability of

judgment has been entered providing for the payment of periodic alimony by one party to the other, the superior court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party."

[2] "[General Statutes] Sec. 46b-82. (Formerly Sec. 46-52). ALIMONY. At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court may deem desirable. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

"[General Statutes] Sec. 46b-84. (Formerly Sec. 46-57). PARENTS' OBLIGATION FOR MAINTENANCE OF MINOR CHILD. (a) Upon or subsequent to the annulment or dissolution of any marriage or the

these criteria, the trial court has broad discretion; "[t]he test is whether the court could reasonably conclude as it did." *Koizim* v. *Koizim*, 181 Conn. 492, 497, 435 A.2d 1030 (1980); *Noce* v. *Noce*, 181 Conn. 145, 149, 434 A.2d 345 (1980); *Aguire* v. *Aguire*, 171 Conn. 312, 314, 370 A.2d 948 (1976).

Our review is limited to deciding whether the trial court has abused its legal discretion. As we have repeatedly noted, "trial courts have a distinct advantage over an appellate court in dealing with domestic relations, where all of the surrounding circumstances and the appearance and attitude of the parties are so significant." *Jacobsen* v. *Jacobsen*, supra, 262; *Koizim* v. *Koizim*, supra, 498; *Fucci* v. *Fucci*, 179 Conn. 174, 180–81, 425 A.2d 592 (1979); *Grinold* v. *Grinold*, supra, 194.

Applying this test to the present appeal, we find no error in the trial court's modification of the award of alimony from $125 to $225 weekly, and the

entry of a decree of legal separation or divorce, the parents of a minor child of the marriage, shall maintain the child according to their respective abilities, if the child is in need of maintenance.

"(b) In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child.

"(c) After the granting of a decree annulling or dissolving the marriage or ordering a legal separation, and upon complaint or motion with order and summons made to the superior court by either parent or by the commissioner of administrative services in any case arising under subsection (a) of this section, the court shall inquire into the child's need of maintenance and the respective abilities of the parents to supply maintenance. The court shall make and enforce the decree for the maintenance of the child as it considers just, and may direct security to be given therefor."

award of support for the daughter Laura from $45 to $75 weekly. In light of the defendant's markedly altered financial circumstances, and the facts concerning the needs of the plaintiff and of Laura found by the court and disclosed by the plaintiff's financial affidavit, granting these relatively modest modifications cannot be characterized as an abuse of discretion. The court expressly concluded that there was a substantial change in the circumstances of the plaintiff and of Laura, with respect, inter alia, to their age, health, station and needs. A trial court's conclusion that it has taken into account all of the statutory criteria[3] relevant to an award of alimony or support is sufficient without distinct, special findings about each of these criteria. *Posada* v. *Posada,* 179 Conn. 568, 573, 427 A.2d 406 (1980); *Fucci* v. *Fucci,* supra.

The trial court also modified the order of support for the parties' son Andrew, increasing that award from $45 to $150 a week. That modification included expenses of $125 a week to enable Andrew to attend a private boarding school for boys, the Kent School. The trial court expressly found that the plaintiff had enrolled Andrew in the Kent School without consulting the defendant and that the plaintiff needs financial assistance from the defendant for Andrew's continued enrollment at the Kent School. The court found that Andrew is extremely intelligent and wants to continue at the Kent School. The court also found that the defendant is able to pay for his son's education at the Kent School, but refuses to do so because he believes a private school at the secondary level is unnecessary and undesirable. No one in the defendant's family has ever

---

[3] See General Statutes § 46-52 (now § 46b-82), and § 46-57 (now § 46b-84).

received private primary or secondary education. In reviewing whether these findings suffice to establish a reasonable basis for an order to pay the increased order of support, we note, further, that although the trial court repeatedly expressed its skepticism about the accuracy of the defendant's financial disclosures,[4] the court expressed no such doubts about the good faith of the defendant's objection to private secondary schooling.

This court has only once had the opportunity to consider whether a parent may be compelled to provide private school education for his child. In *Cleveland* v. *Cleveland,* 161 Conn. 452, 461, 289 A.2d 909 (1971), we held that "courts have the power to direct one or both parents to pay for private schooling, if the circumstances warrant. It is a matter to be determined in the sound discretion of the court on consideration of the totality of the circumstances including the financial ability of the parties, the availability of public schools, the schools attended by the children prior to the divorce and the special needs and general welfare of the children. Notes, 133 A.L.R. 902, 909, 56 A.L.R.2d 1207, 1215." When that case returned to this court after action by the trial court upon remand, we recognized, however, that a noncustodial parent might reasonably and in good faith differ with a custodial parent as to what school would be most appropriate for a child at any particular time. *Cleveland* v. *Cleveland,* 165 Conn. 95, 98–99, 328 A.2d 691 (1973). When such a good faith dispute arose, we upheld the modification of a decree which had ordered the noncustodial father to pay boarding school or college expenses on the con-

---

[4] The court stated during the proceedings, "I will say for the record that this [the defendant's financial] affidavit was misleading to the Court."

dition that he be consulted about the choice of the relevant educational institution. The effect of the modification was to substitute a lump sum support obligation, in a lesser amount, for the prior obligation to pay all educational expenses.

Like *Cleveland* v. *Cleveland,* the cases in other jurisdictions reflect the tension between the right of the custodial parent to make educational decisions in the best interests of the child and the right of the noncustodial parent, if asked to pay the bill, to take, in good faith, a different view of educational choices. We have found no case, nor has any been cited to us, in which a parent has been compelled to pay the total cost of private schooling to which he objects because of a principled preference for public primary and secondary schooling. Many of the cases denying such an obligation are distinguishable because the requisite financial ability to pay for such schooling was not established. See, e.g., *Holt* v. *Holt,* 330 So. 2d 489 (Fla. App. 1976); *Degener* v. *Degener,* 478 S.W.2d 687 (Mo. App. 1972); *Forman* v. *Forman,* 127 N.Y.S.2d 17 (Dom. Rel. Ct. 1954). Many of the cases affirming such an obligation are distinguishable because they, like *Cleveland* v. *Cleveland,* involve interpretation of a prior agreement or divorce decree authorizing private schooling. See, e.g., *Savell* v. *Savell,* 213 Miss. 869, 58 So. 2d 41 (1952); *Bize* v. *Bize,* 154 Neb. 520, 48 N.W.2d 649 (1951); *Kern* v. *Kern,* 65 Misc. 2d 765, 319 N.Y.S.2d 178 (1970). Cf. *Van Nortwick* v. *Van Nortwick,* 87 Ill. App. 2d 55, 230 N.E.2d 391 (1967). Although some courts have indicated, in dictum, that tuition at a private school was not an expense which a court could order a noncustodial parent to pay; *Ziesel* v. *Ziesel,* 93 N.J. Eq. 153, 157, 115 A. 435 (1921); *Winston* v. *Winston,* 50 App. Div. 2d

527, 375 N.Y.S.2d 5 (1975); in these cases there were also financial impediments to such an order of support. Those courts that have ordered private school expenses to be paid were not confronted with principled objection to such schooling: in *Cappel* v. *Cappel,* 243 Iowa 1363, 1367, 55 N.W.2d 481 (1952), there was, furthermore, some showing of special need, and in *Williams* v. *Barnette,* 226 La. 635, 639, 76 So. 2d 912 (1954), the parent ordered to pay school expenses did not appeal that order.

The case before us appears therefore to be a case of first impression, not only here but elsewhere in this country.[5] The record before us is thus especially significant as we explore these uncharted waters. That record shows a gifted child, eager to go to a private secondary school, and a noncustodial parent with sufficient financial means to pay for such education. What the record does not show is, however, equally revealing. There is no showing of this child's special educational or psychological need for private schooling or of the inadequacy, in general or for this child, of the local public schools. There is no showing that, but for this divorce, this child would probably have attended a private school; in fact, the defendant's family history indicates the opposite. There is no showing that the defendant ever agreed to private schooling for his

---

[5] It is important to recognize that this case involves private secondary schooling rather than college expenses. The issues raised in the college cases, on which we express no opinion, are different in two respects from the case before us. Because college-bound children are normally over the age of 18, college expense cases pose an issue of support past the age of minority which is not involved in the case before us. In the college expense cases, furthermore, there may be, as Professor Clark suggests, a more cogent argument that such expenses have become necessaries. Clark, Domestic Relations § 15.1, pp. 497–98; see annot., 99 A.L.R.3d 322 (1980).

son. To the contrary, the trial court has found, as a fact, that the defendant believes that his son's enrollment at the Kent School is unnecessary and undesirable.

We have come to accept the unfortunate reality that marital relationships sometimes break down irretrievably without fault due to the emergence of irreconcilable differences between the marital partners. *Joy* v. *Joy,* 178 Conn. 254, 256, 423 A.2d 895 (1979). The same irreconcilable differences that led to the breakdown of the marriage often spill over into significantly divergent views about child rearing. *Seymour* v. *Seymour,* 180 Conn. 705, 708–709, 433 A.2d 1005 (1980). In order to minimize the disruptive impact of such conflicts upon the children of the marriage, custody may be awarded to one parent alone; *Seymour* v. *Seymour,* supra; or a monetary award substituted for divisive joint decision-making. *Cleveland* v. *Cleveland,* supra, 101. The right of the custodial parent to make educational choices is, however, an insufficient basis, absent a showing of special need or some other compelling justification, for increasing the support obligation of the noncustodial parent who genuinely doubts the value of the program that he is being asked to underwrite. In the light of the totality of the circumstances in this case, we conclude therefore that the trial court abused its discretion in modifying the support award for Andrew Hardisty to require the defendant to pay Andrew's expenses at the Kent School. For the same reason, the award of $3000 retroactive support for Andrew was also in error.

It may be that the support order for Andrew should have been modified with regard to expenses

other than those relating to his attendance at the Kent School. The original award for Andrew was modified in an amount less than the Kent School tuition. A remand is required to make a proper determination of what the defendant's obligation to support Andrew should be.

There is error and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.