[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter comes before the court pursuant to the plaintiff's Motion for Modification of child support payments which was served on the defendant on March 9, 1991. In her Motion for Modification, plaintiff alleges that there has been a substantial change in the circumstances of the parties, and that: the present child support order "does not comport with the [State of Connecticut] child support guidelines." The plaintiff asks the court to: 1) retroactively increase the weekly child support payment paid by the defendant to the plaintiff from $260.00 to $350.00 for the period of May 1, 1991 and June 2, 1991 for the four (4) minor children of the marriage, 2) increase the weekly child support payments paid by the defendant to the plaintiff from $260.00 to $350.00 for the three (3) Minor children of the marriage[1], effective July 5, 1991 forward, and 3) reassign the IRS exemptions for all three minor children to the plaintiff, eliminating the defendant's claim to exemptions for the minor children Patrick and Matthew as under the parties' agreement of July 1, 1987.
A dissolution of marriage between the parties was entered by this court on July 1, 1991 wherein the defendant Gary L. Walters was ordered to pay child support in the amount of $75.00 per week for the minor child Patrick, now age 12; $75.00 per week for the minor child Matthew, now age 14; $50.00 for the minor child Christopher, now age 16; and $60.00 per week for the minor child Elizabeth, presently age 18. The total weekly child support payment to be paid by the defendant is $260.00.
Under the dissolution agreement between the parties, the plaintiff and the defendant have joint custody of the children of their marriage. The children of the marriage live with the plaintiff Elizabeth M. Walters in the marital home in Wethersfield, Connecticut.
The modification is sought on two grounds: first, the plaintiff alleges a "substantial change in the circumstances" of the parties; second, she alleges that the current child support payment does not comport with the state child support guidelines under the present circumstances.
Hearings on the plaintiff's Motion for Modification were held in this court on September 19, 1991, September 26, 1991 and CT Page 875 September 27, 1991. At those hearings, the plaintiff indicated that she sought the modification due to the significant expense of enrolling the three minor children in private schools.[2] According to the record, the plaintiff chose to enroll the minor children in the private schools without consulting the defendant, even though by agreement he enjoys joint custody of the children.
It is the plaintiff's position that the minor child Matthew, age 14, has "special needs" which required his relocation from the public school system in Wethersfield to a private school, specifically The Mooreland Hill School in Kensington, Connecticut. The plaintiff also claims that the minor child Christopher, age 16, also has "special needs" requiring his enrollment in private school. The plaintiff testified that although minor child Patrick has no special needs, she placed him in private school last year.
At the modification hearings, the plaintiff introduced evidence regarding the minor child Matthew's "special needs," including a report from a Wethersfield School psychologist, and a January 12, 1988 Planning and Placement Team Report of the Wethersfield Public Schools. The plaintiff also introduced a February 1990 Evaluation of Christopher Walters by Dr. James Loomis, a licensed psychologist at the Newington Children's Hospital. The court heard testimony form Dr. Jeffrey Madoff, a clinical psychologist who had evaluated Matthew in his role as a consultant to the Wethersfield School system, and from Dr. James Loomis regarding their professional evaluations of Matthew and Christopher, respectively, and their "special needs".
Under Conn. Gen. Stat. 46b-86(a), the Superior Court may modify an order for child support "upon a showing of a substantial change in the circumstances of either party or upon a showing the the final order for child support substantially deviates from the child support guidelines . . ." Conn. Gen. Stat. 46b-86(a). Under current state law, substantial deviation is defined as a deviation from the child support guidelines of fifteen percent (15%) or greater. Public Act 91-76, effective May 9, 1991. Conn. Gen. Stat. 46b-86(a) further permits the Superior Court to, at its discretion, modify child support payments retroactive to the date of service of the motion for modification.
A. Application of the Child Support Guidelines
The court finds that the parties' combined net income is $1,345.99. According to the child support guidelines, the defendant's percentage of contribution from his net salary of $644.69 to support the parties' four minor children to the age CT Page 876 of minor Elizabeth's majority is 47.80, and his percentage of support of the three minor children thereafter is 42.80. Accordingly, the guideline figures for the defendant's weekly support contribution is $308.16 for the four minor children, and $275.92 for their three minor children.
The court finds that there is a significant guideline deviation between the current guideline figure for support of four minor children, and the current order of $200 (adjusted for for minor Elizabeth's majority) for the support of the three minor children. The current support order requires adjustment.
B. The Defendant's Obligation to Pay Private School Tuitions
The evidence in the record indicates that the parties' minor children Matthew and Christopher have been diagnosed by professional psychologists as having specific educational and emotional needs that would be best addressed within a school environment adapted to meet those special needs. The issue before this court is whether the defendant father of these minor children should be ordered to help support the specific private school program unilaterally selected by his former spouse, the minor children's mother.
The defendant opposes any financial support for the private school tuitions of his three minor children, citing the Connecticut Supreme Court's holding in Hardisty v. Hardisty,183 Conn. 253 (1981). In Hardisty, the court addressed a similar child support modification situation where the child of the marriage between the parties was enrolled in a private secondary school by their mother without consulting their father, their mother's former husband. In addressing this case of first impression, the court wrote:
 [The] record shows a gifted child, eager to go to private secondary school, and a noncustodial parent with sufficient financial means to pay for such education. What the record does not show is, however, equally revealing. There is no showing of this child's special educational or psychological need for private schooling or of the inadequacy, in general or for this child, of the local public schools . . . There is no showing that the defendant ever agreed to private schooling for his son.
* * *
 The right of the custodial parent to make educational choices is, however, an insufficient basis, absent a showing of special need or some other compelling CT Page 877 justification, for increasing the support obligation of the noncustodial parent who genuinely doubts the value of the program that he is being asked to underwrite.
Hardisty, supra, at 265
In the instant case, this court finds that the documentary and testimonial evidence does not support a finding that the children's educational or psychological needs requires or now require private schooling. Nor is there sufficient evidentiary support for a judicial finding that the Wethersfield public school system could not have met the needs of minors Matthew and Christopher. The record does not indicate that the educational and emotional needs of these minors could have been addressed only through enrollment in a private school.[3]
To the contrary, Dr. Jeffery Madoff, a psychologist and consultant to the Wethersfield Public School system where Matthew had been a student until June of 1988, testified that the Wethersfield Public School system has a reputation of having one of the finest special needs program, and that the Wethersfield Public School system could have provided Matthew with an adequate program to meet his special needs. Although Dr. Madoff stated that a "private school setting would have been in Matthew's best interest," he testified further that he has not seen Matthew since 1987; he has no knowledge as to whether Matthew presently has any special needs; and he has no personal knowledge of any particular services available to Matthew at the private school to which he transferred. Furthermore, Dr. Madoff signed the Wethersfield Public Schools' Planning and Placement Team Report (PPT), dated January 12, 1988 [Exhibit 2] which found that a recent decline in Matthew's academic performance was caused by his preoccupation with social and family issues. This report found that Matthew's academic needs are being addressed by a private math tutor chosen by his mother while his social and emotional issues are being addressed by an outside psychiatrist. After noting that the social worker will monitor Matthew's social performance, the report concludes that although Matthew is not identified as a student who would benefit form special education, . . . "if he does not improve another PPT will be held to discuss the need for more educational services." The plaintiff signed this report.
Minor Christopher was evaluated psychologically on January 30, 1989 and February 1, 1990 by Dr. James Loomis of the Newington Children's Hospital. A Licensed Psychologist, Dr. Loomis found Christopher as having above-average cognitive abilities, and as having conflicts with he developmental demands of adolescence, together with difficulty managing aggression and depression. In his evaluation Dr. Loomis CT Page 878 recommended, inter alia, that Christopher's family engage in family treatment to address how they have coped with the divorce, the current role structure of the family, and ways of supporting him. The evaluation found that "[i]t is crucial that Christopher family and the school team work closely together in order to established effective ways to motivate Christopher in his academic program and to set appropriate limits on his behavior." Furthermore, Dr. Loomis in this evaluation recommended that ". . . when Christopher is ready, he should consider individual counselling so that he has a forum to discuss the feelings his is struggling with."
Psychologist James Loomis testified that Christopher's needs would best addressed in a highly-structured small-group setting, but he did not specifically advocate private school as the only educational avenue to pursue for Matthew. Dr. Loomis, in fact, wrote the plaintiff's counsel on April 26, 1991 to stress that he "did not formally recommend a private school program for Christopher Walters as part of [his] evaluation of February, 1990."
In the April 26, 1991 letter Dr. Loomis did state that had he been asked he would have recommended for Christopher ". . . a program with small highly structured classrooms and higher levels of staff attention and support." Dr. Loomis found this type of program less available in the public school system. Dr. James Loomis testified further that not having seen Christopher since the February 1990 evaluation he would have to conduct a new evaluation to determine Christopher's presents needs.
Mr. Frank Stuart, the Director of Pupil Personnel Service and Special Education testified that the Wethersfield Public School System could have met the needs of the parties; minor children. Mr. Stuart explained that the school system had available not only internal sources but also access to other public school, quasi-school districts and private schools. In addition. Mr. Stuart explained the appellate rights which the plaintiff had to seek these resource opportunities if she were dissatisfied with the needs evaluation and services provided by Wethersfield.
Mr. Frank Stuart's testimony relative to the rights of appeal and resources parallels the provisions of special education rights in Chapter 164 of the Connecticut General Statutes. The plaintiff has not availed herself of these rights and potential resources, including payment of private school tuition and expenses. Some, if not all of the resources set out in Chapter 164 of the Connecticut General Statutes, may not be beyond the reach of the plaintiff and the parties' minor CT Page 879 children, if they can meet the applicable qualifying criteria.
The record shows that while private schools of often provide effective programs to address the special educational and emotional needs of children such as Matthew and Christopher Walters, it is by no means clear that substantially similar and adequate programs were not available to these children within the Wethersfield Public School system. The record indicates that the opposite may in fact be true — that the highly respected Wethersfield Public School system does have the ability to effectively meet the special needs of students such as Matthew and Christopher, and that the plaintiff did not fully explore this option before choosing to enroll her children in and obligating herself to pay for private school programs.
Given the facts before the court and the Supreme Court's holding in Hardisty, supra, this court cannot compel the defendant to help pay the requested private school costs.
NEW ORDER OF CHILD SUPPORT
Given the facts of this case relative to the financial situation of the parties and their ability to contribute to the support of their minor children, and having considered the statutory criteria outlined in Connecticut General Statutes Section 46b-215(b), the court established the new support order for the defendant at $300 per week from May 1, 1991 until July 3, 1991 (the day before minor Elizabeth's majority) and $270 per week from May 1, 1991 until further order of this court.[4] Apart from establishing a benchmark for support analysis the court finds that a strict application of the child support guidelines to this case would be inequitable. The arrearage caused by the retroactivity of this order shall be paid at the rate of not less than $10.00 per week.
Payments pursuant to the foregoing order shall commence no later than January 24, 1992.
FURTHER ORDERS
1. A contingent wage execution shall enter against the defendant relative to the aforesaid child support order.
2. The parties shall adhere to the provisions of Connecticut General Statutes Section 46b-84c.
3. The plaintiff's request for reassignment of the IRS tax exemption for the minor children Patrice and Matthew from the defendant to herself is denied. CT Page 880
CLARENCE J. JONES, J.