[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision Re: Defendant's Motion For Modificationof Child Support No. 112 and Plaintiff's Motion for ContemptNo. 114
The marriage of the parties to this action was dissolved by the court, Axelrod, J. on April 1, 1993. There are two minor children of the parties, Emily Clark Carveth, born January 9, 1982 and Elizabeth Clark Carveth, both March 14, 1984. Presently before this court is the defendant's motion to modify child support and the plaintiff's motion for contempt for the defendant's "failure to make some of the support payments".
Both parties have filed memoranda in support of their positions with respect to the child support issue. The plaintiffs' memorandum, however contains no reference to her motion for contempt. In addition the court finds that the plaintiff has failed to establish a willful disregarding of a court order by: the defendant. The only testimony as to the contempt was that the plaintiff instructed her attorney to file a contempt motion on a Monday, not having received the defendant's payment the preceding Friday. Said payment postmarked on Friday was received by the plaintiff on Tuesday, the following day. Therefore the plaintiff's motion for contempt as against the defendant is denied.
The separation agreement of the parties, as incorporated in the dissolution decree provides as follows:
"4. The husband shall pay to wife, as child support the sum of ($13,000) per year, per child until March 31, 1996 and thereafter ($15,000) per year, per child, until the August 31st after each child reaches the age of majority." Therefore, said order provides for a present payment by the husband (on or after March 31, 1996) of $30,000 per year or $576.92 per week.
In addition, the order provided — that the husband (defendant) would be responsible for the "payment of the private elementary and secondary school tuition, books and fees for the children as well as for their music lessons and instrument rental fees." The husband was responsible, also, for "all expenses and charges" for "sailing lessons, swimming lessons, meals, etc at the Milford Yacht Club which involve the children." CT Page 12399
Child support orders are governed by General Statutes § 46b-56 and § 46b-84. Section 46b-84 (c) provides that "in determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provides such maintenance and the amount thereof, the Court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents . . . ."
General Statute § 46b-86 (a) permits an order for child support to be "altered or modified by [the] court upon a showing of a substantial change in the circumstances of either party . . . whether or not such change of circumstances was contemplated at the time of the dissolution."
Along with those statutory criteria contained in § 46b-84
(c), the court must also look to the "Child Support Guidelines" in order to determine the respective obligations of support, or, in the appropriate case, a deviation therefrom.
The parties share joint legal custody of the minor children, who are with their father one overnight per week from 5:00 p. m. through the following morning and every other weekend from 5:00 p. m. on Friday through 5:00 p. m. on Sunday.
The evidence disclosed that at the time of dissolution the tuition expense for the two children was $65.38 per week. At present Emily's attending Lauralton Hall has increased tuition costs paid by the defendant to $163.00 per week. With this increase defendants total weekly support payment pursuant to the dissolution decree is $894.38.
The defendant is an attorney in private practice and a principal in the law firm of Stevens, Carroll and Carveth in Milford, Connecticut. At the time of dissolution the defendant's financial affidavit claimed a net income of $2,796.77 per week. The plaintiffs' affidavit claimed a net income of $165.00 per week earned as a secretary. The present affidavits of the parties, that of the defendant dated November 5, 1996, and of the plaintiff November 7, 1996, claim a net income of $1242.47 per week for the defendant and $344.00 for the plaintiff.
The evidence revealed that shortly after the dissolution decree the plaintiff obtained her real estate license, and has been working as a real estate sales agent since that time. Her CT Page 12400 net income of $344.00 per week represents an increase of $179.00 per week when compared to her prejudgment affidavit.
At the time of dissolution the defendant conveyed his interest in and to the marital home, located a 33 Snug Harbor Road, Milford, Connecticut, to the plaintiff. The plaintiff took the home subject to mortgage interests having an unpaid balance of $215,000 — $225,000. The plaintiff estimated the market value of the home at $250,000 and the defendant at $300,000. Shortly after obtaining title to the home the plaintiff transferred said home to her parents for no consideration, thus abandoning any equity in the property. This transfer relieved plaintiff of the mortgage payment of $698.00 per week and replaced said obligation with a lease payment of $279.00 per week. The plaintiff testified however, that she has never made a lease payment to her parents, nor is it reasonably probable that she ever will.
With respect to the defendant's net income, the plaintiff argued strenuously that on going buyout payments to an ex partner charged against the defendant's net income should nevertheless, be included in and added to the net income of the defendant. Indeed, such payments are made with after tax dollars and according to the testimony of the plaintiff's accounting expert, Mark Harrison, are includable in the defendant's income for tax purposes, and are non-deductible as business expenses by a law firm.
Furthermore the plaintiff argues that the increased overhead of the law firm resulting from the purchase of a new building and the move and renovation of the practice from one building to another should not be allowed to diminish the defendant's net income for support purposes. In this regard the defendant testified that the move was necessitated by the firm's inability to arrive at a fair rental with the owner of the former building occupied by the firm, said owner being the widow of a deceased partner. When a building directly across the street became available, the principals of the firm, including the defendant purchased the building as they felt it important to remain in the same general area as that previously occupied by the firm for many years.
The court believes that the desire of a firm practicing at the same location for many years, when required to relocate, to attempt to relocate in close proximity to its prior location makes sound business sense, especially for a law practice. This CT Page 12401 is so because it is convenient for clients and enables the firm to retain its presence within a particular neighborhood or community.
With respect to payment made in after tax dollars to a former partner in order to acquire that former partner's interest in a law firm plaintiff's expert Mark Harrison opined that such payments should be added to the defendant's net income since such payments were just "an investment" and no different from any other form of investment. The court accepts that payments made by remaining partners for an ex partner's share of a law practice, are made (a) to fairly compensate the departing partner for his past contribution to the income stream of the partnership, and (b) for cases and clients left behind by the departing partner which will generate income to the partnership in the future. Nevertheless, the court finds that such a "use" of after tax dollars is on the basis of a contractual obligation and, although at sometime in the future might result in increased spendable income to the defendant, at present, and until the obligation is satisfied, results in a decrease in the defendant's spendable income, and for purpose of child support payments, should not be included in net earnings.
Defendant presently pays $21,480 per year, or $413 per week in after tax dollars to this ex partner. This obligation will continue until July 15, 1999. These payments reduce the defendant's available net weekly income from that attributed to him by Harrison from $2,397.04 to $1,984. "For purposes of modifying . . . . obligations under the parties dissolution decree, in determining whether the circumstances have changed the trial court is "limited to considering events arising subsequent to the date of the last modification," or in this case, the date of dissolution. Borkowski v. Borkowski, 228 Conn. 729, 741
(1994). Applying this proscription the court finds that there has been a substantial change in circumstances in that the defendant's net weekly income has decreased substantially from $2,796 to $1,984 and that the plaintiff's net weekly income has increased substantially from $165 to $344. In addition the plaintiff's weekly expenses have decreased substantially as a result of her no longer facing a $698.00 per week mortgage payment which was her obligation at the time of dissolution.
"Once trial court determines that there has been a substantial change in the financial circumstances of one [or both] of the parties, the same criteria that determines an CT Page 12402 initial order of alimony [or support] are relevant to the question of modification. This requires the court to consider without limitation, the needs and financial resources of both parties and their children as well as such factors as health, age and station in life." Hardisty v. Hardisty, 183 Conn. 253,258-259 (1981) (Citations omitted.) Specifically the court should be guided by the statutory criteria outlined in § 46b-84 with respect to the award of child support.
After considering said criteria the court must turn to the child support guidelines for guidance unless the criteria for deviation from said guidelines exist. Section 46b-215a-21 (a) provides as follows: "(a) Applicability . . . when the parents' combined net weekly income exceeds $1,750, awards shall be determined on a case-by-case basis, and the amount of support proscribed at the $1,750 level shall be the minimum presumptive level." This level for two children is $480.00 per week. The court finds that deviation criteria do exist in this case, said factors being the parents earning capacity which exceeds the combined net earnings table calculations, significant educational expenses, for two teenage children, and the willingness of the defendant to continue said responsibility for substantial education and other expenses for the children. Therefore, the court finds that the application of the trial support guidelines would be inappropriate in this case.
It is the order of this court that the defendant's support obligation for his two minor daughters is hereby reduced from $576.92 per week to $300.00 per week or $150 per week for each of the minor children. The defendant is to remain responsible for and shall continue to provide life insurance for the benefit of the children; the defendant shall continue to pay two-thirds of uninsured and unreimbursed dental and orthodontic expenses medical insurance, private school tuition and yacht club expenses of the children which payments presently total $317.00 per week. Therefore the defendant's weekly support expenditure will be $617.00.
This modification order shall be retroactive to May 14, 1996, pursuant to the agreement of the parties. The court is mindful that the defendant has continued to pay the original order of support to the present. Nevertheless the court is not providing for a schedule of payments or deductions from payments in order to account for the defendant's resulting overpayment, as the parties have requested that they work this out themselves. CT Page 12403
Finally the motion of the plaintiff for counsel fees is denied as the court finds that both the plaintiff and the defendant have sufficient income and assets to pay their own counsel fees.
Skolnick, J.