[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff wife, 38, whose birth name is Westberg, and the defendant husband, 38, married on September 23, 1983 in Reno, Nevada. Both parties resided in this state for over one year prior to the commencement of this action by writ dated February 22, 1995, returnable to March 21, 1995.
The following children have been born to the parties issue of the marriage:
Alexandra Lavona, d.o.b. December 2, 1985;
Jacob David d.o.b. June 12, 1988; CT Page 14505
Elijah Freeman d.o.b. December 10, 1990.
The court finds that the marriage has broken down irretrievably and it is dissolved on that ground.
The plaintiff has not been employed during the marriage. Neither party brought any assets to the marriage. The plaintiff's formal education ended after one year of college and some subsequent secretarial courses. The plaintiff is not computer literate nor are her office skills current.
The defendant obtained a B.A. degree in 1981 as well as an associate's degree in aeronautical engineering. The defendant was employed by Butler Aviation as a financial analyst as well as a ground maintenance man until 1987 when he joined People's Express. The employer went out of business. The defendant began a business in his home in 1985 known as ATC Uniforms with a partner, Zafar Amin. They ran the company until about 1990 when outside investors were accepted. One of the earliest was the plaintiff's father who first lent $10,000 and then $50,000 more, receiving debentures. Eventually the ownership became 17% in the defendant and another 17% in his partner Amin. The outside investors acquired equity interests, some by way of convertible debentures. The corporation return for the fiscal year September 30, 1997 reveals (Plaintiff's Exhibit #63) the defendant received compensation of $128,500. The return also lists the defendant as owning 20% of the common stock.
The parties moved to Connecticut in 1989. The defendant's mother subsidized the nanny for the children. The plaintiff had an auto leased to the corporation at her disposal. The parties then moved to Norwalk in 1992 utilizing a no-income verification $200,000 mortgage for the purchase.
The defendant's income from wages was zero for 1993 (Plaintiff's Exhibit #32). For the fiscal year September 30, 1994 the defendant's compensation is listed as $37,500, (Plaintiff's Exhibit #18). The defendant filed a separate 1040 return for 1994 listing wages of $40,500 and for 1995 the defendant listed as wages $69,000 on his separate 1040 return (Plaintiff's Exhibit #37).
The defendant financed a much more costly life style by incurring expenses charged to the corporation or by receiving advances from the corporation which were charged to his loans to CT Page 14506 officers account. The problem this creates is a simple one. Either the money has to be paid back or it is converted to income to defendant at which time income tax liability is created.
The plaintiff's assertion that the loans to officer should be considered income violates logic for it is money owed to the corporation with potential tax liability if not Paid back. It is not the basis for an alimony award.
The defendant's financial affidavit filed October 14, 1998 lists a gross weekly wage of $2076.92 and a net, after mandatory deductions for taxes, of $1809.54. The figures are skewed for the defendant is having his taxes under-withheld since he is paying temporary unallocated alimony and child support. He has not been fully paid since April 1998. The court concludes that sum is the proper income being received by defendant on which to base a periodic alimony award. The court will enter an unallocated award of alimony and child support to obtain maximum income tax benefit. The net income of the defendant is beyond the maximum listed on the child support guidelines and the presumptive minimum will be considered. However, because of the travel expenses that must be incurred by the defendant for visitation since the plaintiff and their children have relocated to California, be considered by the court, Favrow v. Vargas,231 Conn. 1, 34-35.
At issue also is the value of the defendant's interest in the business known as ATC Uniforms, listed by defendant as 9,489 shares. There is not sufficient evidence in the record to contradict the defendant's evaluation of the corporation's current condition as being nil. The defendant and the other active officer have not been prudent but it is not the court's function to find what might have been.
There was a custody dispute that required the appointment of an attorney to represent the children. The sum of $14,000 shall be paid to her from the escrow for her services. The parties have $15,722 in the escrow account being held by Ivey, Barnum O'Mara, a local law firm. The fund is what remains from the sale of the marital home, (Plaintiff's Exhibit #6).
Both parties have a history of drug abuse during the early years of their marriage. Currently the defendant has been diagnosed as having hepatitis C for which he is treated. CT Page 14507
There is a dispute regarding a ring described in plaintiff's Exhibit #1 which was given to plaintiff by defendant in 1991. The defendant has made partial stipulation to the ring' s former owner, Depis Sarin. The court finds that it was a completed gift. The ring is the plaintiff's sole property.
The parties separated on December 16, 1996 when the plaintiff moved from the marital residence to California where her parents are located. Although each party had complaints against the other party, the court assesses responsibility for the breakdown equally to each party. Irreconcilable differences may occur between the parties for which neither is entirely responsible,Hardisty v. Hardisty, 183 Conn. 253, 265.
The parties have entered into a Stipulation Re Custody and Visitation dated February 9, 1998 that the court approved on September 22, 1998 and which will be incorporated in the orders infra.
There is a pendente lite order for unallocated alimony and child support which had fallen into arrears at the time of trial. The plaintiff submitted a calculation (Plaintiff's Exhibit #62) showing an arrears of $22,633 as of November 1, 1998, including "house mortgage, taxes, insurance at $457 per week through November 1, 1996 $11,882" which the defendant agreed to pay as set forth in the parties' first stipulation (file #105) and then modified on October 11, 1995. In the plaintiff's financial affidavit filed October 14, 1998, the plaintiff lists an arrears due her of $17,336 through September 1998. The affidavit was never amended but the court finds no other evidence that contests the plaintiff's higher number and it is accepted.
Having reviewed the evidence in light of the statutory criteria found in § 46b-81 and § 46b-82 as well as relevant case law, the court enters the following decree.
 1. Judgment is entered dissolving the marriage on the ground of irretrievable breakdown.
 2. The parties' stipulation re custody and visitation is ordered, a copy of same order annexed to the judgment and incorporated therein.
3. The defendant is ordered to pay the sum of $900 weekly to the plaintiff as unallocated alimony and child support. A CT Page 14508 wage withholding order is entered. The alimony is rehabilitative in nature to allow the plaintiff to acquire the skills necessary to become productive. Therefore, the alimony order is to be non-modifiable as to term in any event, and shall end on January 1, 2008 if not sooner terminated by the plaintiff's remarriage, the death of either party, or future court order. Section 46b-86
applies to this periodic order.
 4. The defendant shall be solely responsible for any travel expenses incurred to effect visitation.
 5. The attorney for the children is awarded $14,000 as compensation for her services in this matter, said fee being found fair and reasonable.
 6. The balance of the escrow fund shall be divided equally between the parties.
 7. The plaintiff shall retain the diamond ring discussed supra as her sole property.
 8. The defendant shall retain his interest in the ATC business as his sole property.
 9. The plaintiff shall be solely responsible for the liabilities listed on her financial affidavit.
 10. The defendant shall be solely responsible for the liabilities listed on his financial affidavit.
 11. The defendant shall repay the pendente lite arrears at the rate of $1,000 monthly. Either party may petition for a hearing if the final arrears cannot be agreed upon. The arrears through and to November 1, 1998 is found to be $22,633.
12. The defendant shall continue to provide medical insurance for the children at his expense. The parties shall divide equally any unpaid bill balances as well as deductibles. Section 46b-84 applies to this order. In the event that the defendant's coverage is limited to participating physicians and hospitals in the New York area the plaintiff may move for modification of this order since the children are California residents. CT Page 14509
 13. No allowance to prosecute is awarded nor is allowance to defend awarded.
The attorney for the plaintiff is directed to prepare the judgment file.
HARRIGAN, J.
 STIPULATION RE CUSTODY AND VISITATION
1. Custody and Primary Residence
A. The mother, Catherine Issacharoff, and the father, Matthew Issacharoff, shall have joint legal custody of the minor children, Alexandra, Jacob and Elijah. The minor children shall reside with the mother, who presently resides in California, and she shall have physical custody of the minor children.
B. The parties shall consult with one another on all major decisions regarding the health, education and welfare of the minor children, as defined below, with a view to arriving at a harmonious policy calculated to promote the best interests of the children. "Major decisions" regarding the children's health are those which need not be made on an emergency or urgent basis and involve non-routine elective medical care. The mother shall inform the father of any need for orthodontic care and treatment with any mental health professionals. "Major decisions" regarding the children's education are those involving attendance at a school other than a local public school. The mother shall inform the father of the children's enrollment or continuing participation in any religious school. "Major decisions" involving the children's welfare are those involving extended absence from the home of either parent for more than thirty (30) days. Either party may make routine decisions (i.e., decisions that are not "major decisions") about the children while they are residing with the mother or visiting with the father. Decisions that must be made on an emergency or urgent basis with respect to the children may be made by either parent while the children are residing with the mother or visiting with the father, and the parent making such decision shall inform the other of the circumstances of the decision as soon as possible, but no later than fourteen (14) hours after said emergency.
C. In the event of serious illness or personal injury of any CT Page 14510 of the children, the first party to learn of such illness or injury shall notify the other as soon as possible. For the purposes of this paragraph, "serious illness or personal injury" shall mean any sickness, ailment or injury which requires other than the routine services of a physician.
2. Father's Time with the Children
A. One week following the end of the school year in June, 1998 and two weeks in August before the beginning of school in the fall of 1998, calculated from the last day of the school year to five (5) days before the first day of the next school year during which the children will visit their father on the East Coast (excluding July 4 through July 12). For the summer of 1999 and thereafter, two (2) weeks following the end of school and two (2) weeks in August before the beginning of the school year, calculated as above, during which the children will visit with their father on the East Coast. The children shall return to the mother's residence so there are at least five (5) days between the travel day and the first day of school each year.
B. The father shall notify the mother in writing by certified mail, return receipt requested, by April 1 of each year as to the exact dates and places in which he will exercise summer visitation with the minor children. The mother shall then have fifteen (15) days to confirm in writing by certified mail, return receipt requested, that this is acceptable or to offer alternates. The parties agree, however, that the father's choice of dates, if made by April 1, shall take precedence over any other plans made for the minor children for the summer and the mother shall not make any plans in the summer which impede the father's summer visitation for the dates he chooses. If the father does not choose dates for his summer visitation by April 1, the children may go ahead and make plans for summer activities which shall take precedence over any subsequent choice of dates by the father, provided that the father shall still have the amount of time provided for visitation as set forth in paragraph A above.
C. Visitation during the Thanksgiving holiday in alternating years beginning with 1997 (i.e., the father shall have visitation with the children during the Thanksgiving holiday in 1997, they will remain with the mother during the Thanksgiving holiday in 1998, and so on thereafter). CT Page 14511
D. Visitation during the Christmas vacation in alternating years beginning with 1998 starting on December 27 and ending two (2) days before school begins during which the children will visit the father on the East Coast. The children shall travel to visit their father on December 27 and shall return to the mother no later than two (2) days before the beginning of school.
E. One week during the children's February vacation from school during which the children will visit their father on the East Coast. The children shall travel to visit their father on the Saturday of the first weekend of this vacation and shall return to the mother on the Saturday of the second weekend of this vacation.
F. One three-day weekend in October during which the father will visit the children in California.
G. One three-day weekend in May during which the father will visit the children in California.
H. The father shall also have the option to visit the children in California on the second weekend of each month in which he does not otherwise have any scheduled visitation (namely, March, April, June, September and November or December depending on the alternating Thanksgiving and Christmas holidays). Such visitation shall begin on Friday at 6:00 p. m. and end on Sunday at 6:00 p. m., provided that such visitation does not interfere with the children's participation in previously scheduled activities. The father shall facilitate the children's regularly scheduled weekend activities and shall be entitled to participate in them, as appropriate. The father shall give advance written and telephonic notice to the mother no less than three (3) days prior to any such optional visitation. If such notice is not given, the optional visit shall not take place. The father shall pay all expenses associated with visitation on the optional weekends, including his own travel and lodging expenses.
I. The parties shall consult with each other to reach agreement on the specific dates for the visitation set forth in paragraphs C through E at least thirty (30) days in advance of such visitation. The parties may agree to vary this schedule and the schedule for summer visitation, but any request to extend visitation shall be made and agreed upon prior to the scheduled visitation. The father shall provide during such periods any accommodations and activities for the children which are CT Page 14512 appropriate and take into consideration their needs and wishes. The father shall advise the mother of where the children will be staying, including addresses and telephone numbers as soon as they are known, but in any event not later than twenty-four (24) hours in advance of each period of visitation so that she may communicate with them as provided in paragraph 4 below.
J. The mother shall provide the father with the names, business addresses and telephone numbers of the children's teachers and primary care physicians and specialists (not including gynecological specialists) in California. The mother shall also send the father copies of any school calendars received from the children's schools and any report cards or other teachers' reports or letters concerning the children's progress received from the children's schools within one (1) week of receipt of such information.
K. During any of such time periods when the children are residing with the mother or visiting the father, the children may visit with other relatives of the mother or father, and may stay overnight with such relatives.
3. Transportation
A. When the children travel to be with the father for any regularly scheduled visitation, the father shall be responsible for making the children's travel arrangements. Following agreement on the specific travel dates, the father shall obtain airline tickets at least 14 days in advance of the scheduled visitation in order to take advantage of the best price available and he shall notify the airline that the children are traveling unaccompanied by an adult at the time of the purchase of their tickets. Such air transportation shall be on a regularly scheduled non-stop flight on a major airline (not a discount or charter airline). If connecting flights on a major airline are necessary for visitation with the father, the father shall meet the children at the destination of their initial leg and accompany them to their ultimate destination; upon the return trip from such visitation, the father shall accompany the children back to the point at which the last leg of their return trip begins. The father shall confirm the flight information in writing and send the tickets to the mother within forty-eight (48) hours of obtaining the tickets. The mother or a member of her immediate family shall provide transportation for the children to and from the major airport nearest her home, and the CT Page 14513 mother shall bear the cost of such local transportation. The father or a member of his immediate family will transport the children to the airport and meet the children at the airport when they travel to be with the father for visitation, and the father shall bear the cost of such local transportation. If either parent will not personally meet the children, he or she shall inform the other parent at least twenty-four (24) hours before the flight of the identity of the family member who will meet the children so that the airline can be advised accordingly. In the event of a delay of more than two (2) hours, either parent shall contact the other immediately.
B. Except as provided herein, all expenses associated with the visitation set forth in this stipulation shall be paid by the father, without prejudice, until a settlement agreement has been reached on all financial issues or the court has rendered judgment following a trial on such issues, as a result of which an allocation of these expenses may otherwise be agreed upon or determined by the court.
4. Access to the Children
Each party shall have reasonable access to the children while they are with the other party, including free access by mail and by telephone before school and after school during reasonable hours of the day and evening. In order to facilitate such access, the father shall advise the mother in advance of each period of visitation, as set forth in paragraph 2, as to where the children will be staying throughout each such visitation and supply a telephone number where they can be reached. The mother will facilitate the children's availability on Sundays from 6:00 to 7:00 p. m. California time, as a convenient time for the father to call them, so long as it does not interfere with their regularly-scheduled activities. The children and their father shall have unfettered access through e-mail through a dedicated line and computer to be provided by the father. The children's telephoning of either parent shall not be prohibited or interfered with in any fashion. Neither party shall do anything which may estrange the children from the other party nor injure the opinion of the children as to their mother or father or act in such a way as to impair the free and natural development of the children's love and respect for the other party. In any hearing to modify custody and/or visitation, the court may hear competent testimony from either party regarding any behavior by either parent in contravention of this paragraph and that CT Page 14514 testimony may be considered by the court in rendering its orders concerning custody, visitation and attorney's fees.
5. In the event that it shall be determined by a court of competent jurisdiction that either party shall be in contempt with respect to the terms of this Agreement, the offending party shall pay to the other party reasonable attorneys' fees and court costs incurred in the enforcement of the provisions of this Agreement.
6. This agreement represents the parties' resolution of the custody and visitation issues in this case and shall be incorporated in the final judgment in this matter.
CATHERINE W. ISSACHAROFF MATTHEW J. ISSACHAROFF
_______________________________ ______________________
_______________________________ ______________________ Patricia A. Carpenter Alan S. Rubenstein Day, Berry Howard Rosenblum Filan, LLC One Canterbury Green 1 Landmark Square Stamford, CT 06901 Stamford, CT 06901 (203)977-7335 (203)358-0200 Counsel for the Plaintiff Counsel for the Defendant
_______________________________ Karen L. Williams
43 Corbin Drive Darien, CT 06820 (203)656-2573 Counsel for the Minor Children
[EDITORS' NOTE: SIGNATURES IS ELECTRONICALLY NON-TRANSFERRABLE.]