******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

PETRICIA S. WEAVER *v.* SCOTT A. SENA
(AC 42411)

Keller, Prescott and Devlin, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court granting the motion filed by the defendant to modify custody of the parties' minor child. The trial court had previously approved the parties' written agreement under which they agreed to share joint legal custody of the child, with the child living with the plaintiff and the defendant having visitation rights. The parties had further agreed that, in the event of an impasse, the plaintiff would have final decision-making authority in certain matters pertaining to the child. The defendant alleged that the plaintiff was incapable of fostering a healthy relationship between him and the child and that she continuously interfered with his access to and time with the child. The court ordered that primary physical custody was to be transferred to the defendant, who would have final decision-making authority in matters pertaining to the child. *Held*:

1. The plaintiff could not prevail on her claim that the trial court improperly modified custody without first finding that a material change in circumstances had occurred and improperly determined that modification was in the best interests of the child: although the court did not explicitly find a material change in circumstances, an implicit finding of a change in circumstances will satisfy the threshold predicate for modification, as there was ample evidence that the plaintiff's efforts to embroil the child in the custody dispute and alienate him from the defendant had intensified, which constituted a material change in circumstances; furthermore, it was not improper for the court to agree with most of the findings of the psychologist who conducted a child custody psychological examination but to decline to follow his recommendation that the child should continue to reside with the plaintiff, as the psychologist testified that the plaintiff's efforts to interfere with the defendant's relationship with the child had not curtailed and that the custody arrangement would need to be changed if the plaintiff's behavior continued unabated; moreover, in granting the motion to modify, the court did not abuse its discretion in placing more weight on certain statutory (§ 46b-56 (c)) factors other than ones the plaintiff believed may have been favorable to her, and the order transferring final decision-making authority to the defendant was not improper, as the court reasonably could have concluded that, coupled with the practical rationale of affording such authority to the primary physical custodian, the plaintiff's emotional difficulties and untreated mental health issues would interfere with her role as the final decision maker.

2. The plaintiff's unpreserved claim that the trial court violated her right to due process by unduly limiting her case-in-chief was unavailing, as she failed to raise a claim of constitutional magnitude and, thus, failed to establish the existence of a constitutional violation: although the plaintiff asserted that the court limited her ability to put on evidence by continually admonishing and bullying her, the admonitions by the court were necessary to keep her focused on the issues, she identified only a single comment by the court as an example of its conduct, and she did not identify evidence that she was prevented from presenting; moreover, despite the plaintiff's claim that the court unduly limited her case-in-chief by affording her only one hour to present her case, she could not claim that her constitutional right to be heard was violated, as she was afforded more time to present her case than she requested, she did not identify evidence that she would have introduced if she had been afforded more time, and she did not allege how she was harmed by the time limitation imposed by the court.

Argued May 13—officially released September 8, 2020

*Procedural History*

Action for custody of and support for the parties'

minor child, brought to the Superior Court in the judicial district of New London at Norwich, where the defendant filed a cross complaint; thereafter, the court, *Hon. Joseph J. Purtill*, judge trial referee, rendered judgment in accordance with the parties' separation agreement; subsequently, the court, *Hon. Joseph Q. Koletsky*, judge trial referee, granted the defendant's motion to modify custody of the parties' minor child, and the plaintiff appealed to this court. *Affirmed.*

*Cody A. Layton*, with whom were *Drzislav Coric* and, on the brief, *Aleyshia F. Young*, for the appellant (plaintiff).

*Campbell D. Barrett*, with whom were *Johanna S. Katz* and, on the brief, *Jon T. Kukucka*, for the appellee (defendant).

*Opinion*

DEVLIN, J. The plaintiff, Petricia S. Weaver, appeals from the judgment of the trial court granting the motion filed by the defendant, Scott A. Sena, to modify custody of the parties' minor child. The plaintiff claims that the trial court erred in granting the defendant primary physical custody of, and final decision-making authority in matters pertaining to, the parties' minor child, who was then eleven years old and had resided with the plaintiff since his birth, in the absence of a finding of a material change in circumstances and in contravention of the minor child's best interests. The plaintiff also contends that the trial court violated her constitutional right to due process by "unduly limiting her case-in-chief." We affirm the judgment of the trial court.[1]

The following procedural history is relevant to our review of the plaintiff's claims on appeal. The minor child was born to the parties, who were never married, on May 6, 2007. In March, 2008, the plaintiff filed this action against the defendant seeking orders of custody and support as to the minor child. In July, 2008, the trial court, *Hon. Joseph J. Purtill*, judge trial referee, approved the parties' agreement that they would share joint legal custody of the minor child, the plaintiff would have primary physical custody, and the defendant would have visitation rights.

Since the entry of those initial orders, the parties have engaged in extensive litigation regarding the custody of and visitation with the minor child. Prior to the December 10, 2018 orders, from which the present appeal was taken, the parties most recently, on May 18, 2016, entered into an agreement whereby, inter alia, they would continue to share joint legal custody of the minor child, who would continue to reside with the plaintiff. The parties agreed that the defendant, who resides in Massachusetts, would continue to have visitation with the minor child during the school year pursuant to prior court orders, essentially every other weekend and certain holidays. The parties further agreed that, in the event of an impasse, the plaintiff would have final decision-making authority in educational, medical and religious decisions. The court adopted the parties' agreement and further ordered that the minor child would spend three weeks of vacation each summer with the plaintiff and the remainder of the summer with the defendant.

On January 3, 2018, the defendant filed a motion to modify, seeking immediate physical custody of the minor child and supervised visitation for the plaintiff. In his motion, the defendant alleged that the plaintiff had demonstrated that she was incapable of fostering a healthy relationship between him and the minor child and that she continuously interfered with his access to and time with him. The defendant cited to two specific

instances in December, 2017, when the plaintiff's interference with his relationship with the minor child demonstrated her increased efforts to manipulate the minor child and alienate him from the defendant.

Following a four day hearing, the trial court, *Hon. Joseph Q. Koletsky*, judge trial referee, issued a memorandum of decision on December 10, 2018, ordering, inter alia, that it was in the best interests of the minor child that primary physical custody be transferred to the defendant in Massachusetts "immediately upon the end of the last day of school prior to Christmas vacation at [the minor child's] school at 12:30 p.m." and that the plaintiff would have supervised visitation with the minor child in Massachusetts. The court ordered that the defendant would have final decision-making authority.[2] The court further ordered that the plaintiff would not have any unsupervised telephone calls with the minor child until she received mental health treatment and until further order of the court. The court retained jurisdiction over the case, ordered the plaintiff to submit to a psychiatric evaluation, and prohibited the plaintiff from filing any further motions without receiving prior permission from the court. The court explained that the foregoing orders were necessitated by the "emotional difficulties of the minor child [that] have been caused in large part by [the plaintiff's] behavior, being driven, as it is, by her serious mental [health] issues, which, to date, have largely not been treated effectively." This appeal followed.[3]

I

The plaintiff challenges the trial court's decision to transfer primary physical custody of the minor child to the defendant. Specifically, the plaintiff claims that the court improperly modified custody without first finding that a material change in circumstances had occurred since the entry of the prior order. She also challenges the trial court's determination that modification was in the best interests of the minor child. We are not persuaded.

"General Statutes § 46b-56 provides trial courts with the statutory authority to modify an order of custody or visitation. When making that determination, however, a court must satisfy two requirements. First, modification of a custody award must be based upon [inter alia] a material change [in] circumstances which alters the court's finding of the best interests of the child . . . .[4] Second, the court shall consider the best interests of the child and in doing so may consider several factors.[5] . . . Before a court may modify a custody order, it must find that there has been a material change in circumstances since the prior order of the court, but the ultimate test is the best interests of the child. . . . These requirements are based on the interest in finality of judgments . . . and the family's need for stability. . . . The burden of proving a change to be in the best

interest of the child rests on the party seeking the change. . . .

"Not all changes occurring in the time between the prior custody order and the motion for modification are material. . . . Although there are no bright-line rules for determining when a material change in circumstances warranting the modification of custody has occurred, there are several relevant considerations, including whether . . . the change affects the child's well-being in a meaningful way." (Citations omitted; emphasis omitted; footnotes added; footnote omitted; internal quotation marks omitted.) *Clougherty* v. *Clougherty*, 162 Conn. App. 857, 868–70, 133 A.3d 886, cert. denied, 320 Conn. 932, 134 A.3d 621 (2016).

"Our standard of review of a trial court's decision regarding custody [and] visitation . . . orders is one of abuse of discretion. . . . [T]he trial court's decision on the matter of custody is committed to the exercise of its sound discretion and its decision cannot be overridden unless an abuse of that discretion is clear. . . . The controlling principle in a determination respecting custody is that the court shall be guided by the best interests of the child. . . . In determining what is in the best interests of the child, the court is vested with a broad discretion. . . . [T]he authority to exercise the judicial discretion under the circumstances revealed by the finding is not conferred upon this court, but upon the trial court, and . . . we are not privileged to usurp that authority or to substitute ourselves for the trial court. . . . A mere difference of opinion or judgment cannot justify our intervention. Nothing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . .

"The trial court has the opportunity to view the parties [firsthand] and is therefore in the best position to assess the circumstances surrounding a dissolution action, in which such personal factors as the demeanor and attitude of the parties are so significant. . . . [E]very reasonable presumption should be given in favor of the correctness of [the trial court's] action. . . . We are limited in our review to determining whether the trial court abused its broad discretion to award custody based upon the best interests of the child as reasonably supported by the evidence." (Internal quotation marks omitted.) *Baker-Grenier* v. *Grenier*, 147 Conn. App. 516, 519–20, 83 A.3d 698 (2014). "We further note that a trial court's factual findings may be reversed on appeal only if they are clearly erroneous. To the extent that the plaintiff claims that the trial court should have credited certain evidence over other evidence that the court did credit, it is well settled that such matters are exclusively within the province of the trial court." *Peters* v. *Senman*, 193 Conn. App. 766, 779, 220 A.3d 114 (2019), cert. denied, 334 Conn. 924, 223 A.3d 380 (2020).

In this case, the defendant moved to modify custody on the ground that "the defendant has had two [recent] visits with the minor child in which the child has been crying and screaming [that] he doesn't want to go and wants to be home with his mother." The defendant alleged that "[t]his conduct on the part of the minor child is completely opposite the child's desire and demeanor just [one month earlier]." Because the minor child's newly expressed position "mirror[ed] the plaintiff's desires and requests in all of her motions," the defendant alleged, "the minor child is being manipulated and, or, 'coached,' by the plaintiff such that the plaintiff is essentially encouraging parental alienation between the minor child and the defendant."[6]

Although the trial court did not explicitly find a material change in circumstances, this court has held that an implicit finding of a change in circumstances will satisfy the threshold predicate for modification. See *Schade* v. *Schade*, 110 Conn. App. 57, 63, 954 A.2d 846, cert. denied, 289 Conn. 945, 959 A.2d 1009 (2008); see also *Hibbard* v. *Hibbard*, 139 Conn. App. 10, 22–23, 55 A.3d 301 (2012); *Lambert* v. *Donahue*, 78 Conn. App. 493, 506, 827 A.2d 729 (2003). The defendant's motion was based on recent and new allegations that the minor child was being "coached" and "manipulated" by the plaintiff in an effort to alienate him from the defendant. The escalation of the plaintiff's efforts to interfere with the defendant's relationship with the minor child, particularly the increasing emotional impact of those efforts on the child, which, the trial court found, was directly caused by the plaintiff's untreated mental health issues, was the focal point of the modification hearing. There is ample evidence in the record that the plaintiff's efforts to embroil the minor child in this custody dispute and alienate him from the defendant had intensified, as alleged in the defendant's motion to modify, constituting a material change in circumstances since the entry of the prior order.[7]

The plaintiff also challenges the trial court's determination that modification was in the best interests of the minor child. At the modification hearing, in addition to his own testimony, the defendant presented the testimony and written report of James J. Connolly, a licensed psychologist, who had been ordered by the court to conduct a child custody psychological evaluation. Connolly issued a thirty-one page report outlining the findings of his evaluation, which was admitted into evidence at the hearing and supported by his testimony at the hearing. Connolly opined, inter alia, that the plaintiff "is continuing to feel the psychological effects of [her] extremely abusive upbringing," particularly "very substantial levels of anxiety along with some depression," and that she "appears to have transferred many of her feelings of anger and hypervigilance relating to her traumatizing family of origin to her feelings concern-

ing [the defendant] . . . ." Connolly observed: "In addition to very powerful levels of anxiety and depression (which are currently not being treated in an effective fashion due to [her] failure to pursue adequate mental health treatment in the form of psychiatric and psychotherapeutic services), she also manifests a rather serious personality disorder . . . primar[ily] character[ized] . . . [by] histrionic and compulsive tendencies of a quite substantial nature." As a result, the plaintiff "has a highly excessive level of concern about her son's . . . contacts with [the defendant]. [The plaintiff's] poorly controlled feelings of grievance and rage against [the defendant] and her overall state of uncontrolled emotionality appear to have created substantial obstacles for the ongoing relationship between [the defendant] and [the minor child]. [The plaintiff's] insistence that she has somehow or other dealt with the impact of her highly traumatic family of origin and that she is not subject to her untreated emotional disorder is entirely unfounded and misguided. Her protestations that she is not persistently interfering in [the minor child's] relationship with [the defendant] rang very untrue to this evaluator."

Connolly found that, although the minor child "was not suffering from a significant disorder of thought, mood, or anxiety at the present time," he was "experiencing a good deal of situational stress related to the internecine custody dispute between his biological parents." Connolly observed: "Although [the minor child] is experiencing substantial stress, he does not appear to have succumbed as of this point in time to an emotional disorder. He appears to be operating under the strong sense that he must act as his mother's protector and defender, and this has certainly increased his personal stress." Connolly posited: "Let me be very clear about a basic matter that is the most important and troubling issue in this case: [*The plaintiff's*] *currently untreated psychological problems are the primary problem in this child custody matter and the primary issue that threatens the long-term psychological well-being of* [*the minor child*]." (Emphasis in original.) Connolly conditioned his recommendation that the plaintiff retain primary physical custody of the minor child on two requirements: that she immediately undertake "regular mental health treatment to address her serious psychological difficulties" and that she cease "her efforts to disrupt [the minor child's] visits with [the defendant]." If the plaintiff did not "fulfill in a serious way both of these conditions," Connolly opined that "transferring primary residence of [the minor child] to his father may be in order."

The plaintiff argues that the best interests of the minor child could have been served only if the trial court entered an order wholly consistent with Connolly's recommendations, specifically, maintaining primary physical custody of the minor child with her. It

is clear from the trial court's decision that it afforded considerable weight to Connolly's opinion. Despite his misgivings pertaining to the plaintiff, Connolly opined that the minor child should continue to reside with her, but he noted that her efforts to interfere with the defendant's relationship with the minor child had not curtailed, even after repeated court intervention, and he foresaw that the custody arrangement would need to be changed if the plaintiff's behavior continued unabated. Rather than wait until the situation further deteriorated, the trial court declined to follow Connolly's recommendation to maintain primary physical custody of the minor child with the plaintiff. Because the court was entitled to accept or to reject all of part of a witness' testimony, even the testimony of expert witnesses; see, e.g., *Petrov* v. *Gueorguieva*, 167 Conn. App. 505, 528–29, 146 A.3d 26 (2016); it was not improper for the court to agree with most of Connolly's findings but decline to follow his recommendation.[8]

In granting the defendant's motion to modify, the trial court clearly considered the statutory factors set forth in § 46b-56 (c), specifically, subdivision (6), "the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders," subdivision (7), "any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute," and subdivision (12), "the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child . . . ." General Statutes § 46b-56 (c). The plaintiff argues that other statutory factors that the court should have considered in determining the best interests of the minor child weighed in her favor. Although the plaintiff may be correct in her assertion that other statutory factors may have been favorable to her, it was not an abuse of discretion for the court to place more weight on other statutory factors. The record amply supports the court's determination that, due to the emotional difficulties and untreated mental health issues of the plaintiff and her associated efforts to interfere with the defendant's relationship with the minor child, it was in the best interests of the minor child to transfer primary physical custody to the defendant.

For the same reason, we cannot conclude that the trial court improperly afforded the defendant final decision-making authority in matters pertaining to the minor child. The court reasonably could have concluded that the plaintiff's emotional difficulties and untreated mental health issues would interfere with her role as the final decision maker. Coupled with the practical rationale of affording such authority to the primary physical

custodian, the court's order transferring final decision-making authority to the defendant was not improper. Accordingly, we cannot conclude that the trial court abused its discretion in granting the defendant's motion to modify.

## II

The plaintiff, who was self-represented at the hearing on the motion to modify, also claims that the trial court violated her constitutional right to due process by "unduly limiting her case-in-chief." The plaintiff concedes that her claims of constitutional error were not preserved at trial and seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015), under which "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 239–40.

The plaintiff claims that the trial court violated her constitutional right to be heard and cites the following: "A fundamental premise of due process is that a court cannot adjudicate any matter unless the parties have been given a reasonable opportunity to be heard on the issues involved . . . . Generally, when the exercise of the court's discretion depends on issues of fact which are disputed, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Citation omitted; internal quotation marks omitted.) *Szot* v. *Szot*, 41 Conn. App. 238, 241, 674 A.2d 1384 (1996). With these principles in mind, we turn to the plaintiff's claims of constitutional error.

The plaintiff first argues that the court violated her right to due process by "limiting [her] ability to put on evidence and by continually admonishing . . . and bullying her." In support of this claim, the plaintiff argues that, "on the third day of trial, the trial court told [the] plaintiff that it did not know if she could testify and that it could not imagine what else she needed to say, although [she] had not yet testified." The plaintiff does not identify evidence that she was prevented from presenting, and this singular quoted comment is the only example of "continually admonishing" and "bullying" cited by the plaintiff. It is not the role of this court to scour the record in search of support for a party's claim on appeal. See, e.g., *In re Omar I.*, 197 Conn. App. 499, 567 n.16,      A.3d      , cert. denied,

335 Conn. 924, A.3d (2020). We nevertheless have carefully reviewed the transcripts of the four day trial in this case. Although the record reveals that the trial court often expressed impatience and frustration with the plaintiff, we reject the plaintiff's characterization of the court's conduct as "bullying." In fact, the court's admonitions to the plaintiff, though frequent, were necessary to keep her focused on the issues at hand. Because the plaintiff has failed to allege any action by the court that implicates a fundamental right, she has failed to raise a claim of constitutional magnitude. Even if the plaintiff's claim could be construed as constitutional, she has failed to establish the existence of a constitutional violation.

The plaintiff also argues that the trial court unduly limited her case-in-chief by affording her only one hour to present her case, including the presentation of evidence, her testimony and her closing argument.[9] Although the trial court did so limit the plaintiff, it did so only after asking the plaintiff how much time she needed to present her case.[10] When the court asked the plaintiff how much time she needed to testify, the plaintiff first told the court that she needed thirty minutes but then quickly reconsidered and said fifteen minutes. The plaintiff also told the court that her closing argument would take thirty minutes. The court suggested that she use thirty minutes to testify and another thirty minutes for closing argument. The plaintiff so proceeded.[11] The plaintiff cannot claim that her constitutional right to be heard was violated when she was afforded more time to present her case than she requested. Moreover, the plaintiff has not identified what evidence she would have introduced if she had been afforded more time and has thus not alleged how she was harmed by the time limitation imposed by the court. Accordingly, the plaintiff's claims of constitutional error fail.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In addition to transferring primary physical custody of the minor child to the defendant, the trial court ordered that the plaintiff's visitation and telephone calls with the minor child be supervised. The court also ordered the plaintiff to undergo a psychiatric evaluation. She has also challenged these orders on appeal.

On May 21, 2019, while this appeal was pending, the plaintiff filed an application for an emergency ex parte order of custody, in addition to a motion to modify custody. Both of the plaintiff's motions were scheduled to be heard on June 3, 2019.

On June 4, 2019, the parties entered into an agreement whereby, inter alia, counsel would "cooperate to immediately secure a [PhD] level 1 therapist for the minor child that is in network (Cigna) and is reasonably close in proximity to the [d]efendant's home." Once that therapist was secured, the plaintiff would commence unsupervised visitation with the minor child every two out of three weekends from Friday at 7 p.m. to Sunday at 5 p.m. The parties agreed that their counsel would contact James J. Connolly, the psychologist who performed the child custody evaluation in this case, to ascertain whether the psychiatric evaluation that the plaintiff had undergone was the type of evaluation that he anticipated was necessary in December, 2018, and that if it was not, Connolly would further articulate his expectations

regarding that evaluation, and the plaintiff would "cooperate with [the] evaluation immediately." The parties also agreed that the minor child would be allowed to call either party between 7 and 7:30 p.m. each evening for no more than five minutes. Because the terms of this agreement superseded the December, 2018 orders pertaining to the restrictions that were placed on the plaintiff's visitation and telephone calls with the minor child, and the order that she undergo a psychiatric evaluation, there is no practical relief that we can afford to the plaintiff on her appeal from those orders. Accordingly, the plaintiff's challenges to those December, 2018 orders, which are no longer in effect, are moot. See *Thunelius* v. *Posacki*, 193 Conn. App. 666, 686, 220 A.3d 194 (2019). The plaintiff did not amend her appeal to challenge the June 4, 2019 superseding orders, which, as noted, were entered by agreement of the parties.

[2] The court did not set forth a specific visitation schedule, nor did it specify the issues on which the defendant would be afforded final decision-making authority.

[3] On December 20, 2018, the plaintiff filed a motion to set aside and, or, reargue, which the trial court denied on that same day.

On February 13, 2019, the plaintiff filed an amended motion to set aside and, or, reargue. The court summarily denied the motion on February 19, 2019.

[4] Modification of a custody award also may be based on "a finding that the custody order sought to be modified was not based upon the best interests of the child." (Internal quotation marks omitted.) *Clougherty* v. *Clougherty*, 162 Conn. App. 857, 868, 133 A.3d 886, cert. denied, 320 Conn. 932, 134 A.3d 621 (2016). Neither party in this case claimed that the May 18, 2016 order was not in the best interests of the minor child.

[5] General Statutes § 46b-56 (c) provides: "In making or modifying any order as provided in subsections (a) and (b) of this section, the court shall consider the best interests of the child, and in doing so may consider, but shall not be limited to, one or more of the following factors: (1) The temperament and developmental needs of the child; (2) the capacity and the disposition of the parents to understand and meet the needs of the child; (3) any relevant and material information obtained from the child, including the informed preferences of the child; (4) the wishes of the child's parents as to custody; (5) the past and current interaction and relationship of the child with each parent, the child's siblings and any other person who may significantly affect the best interests of the child; (6) the willingness and ability of each parent to facilitate and encourage such continuing parent-child relationship between the child and the other parent as is appropriate, including compliance with any court orders; (7) any manipulation by or coercive behavior of the parents in an effort to involve the child in the parents' dispute; (8) the ability of each parent to be actively involved in the life of the child; (9) the child's adjustment to his or her home, school and community environments; (10) the length of time that the child has lived in a stable and satisfactory environment and the desirability of maintaining continuity in such environment, provided the court may consider favorably a parent who voluntarily leaves the child's family home pendente lite in order to alleviate stress in the household; (11) the stability of the child's existing or proposed residences, or both; (12) the mental and physical health of all individuals involved, except that a disability of a proposed custodial parent or other party, in and of itself, shall not be determinative of custody unless the proposed custodial arrangement is not in the best interests of the child; (13) the child's cultural background; (14) the effect on the child of the actions of an abuser, if any domestic violence has occurred between the parents or between a parent and another individual or the child; (15) whether the child or a sibling of the child has been abused or neglected, as defined respectively in section 46b-120; and (16) whether the party satisfactorily completed participation in a parenting education program established pursuant to section 46b-69b. The court is not required to assign any weight to any of the factors that it considers, but shall articulate the basis for its decision."

[6] The defendant also alleged that the plaintiff took the minor child to the police department following one of his weekend visitations with the defendant so that the minor child could express to a police officer his desire not to visit the defendant but to stay with the plaintiff.

[7] In his brief to this court, the defendant, who is represented by counsel, argues that he was not required to show a material change in circumstances because he sought only to modify physical custody, not legal custody, and that a motion to modify physical custody equates to a motion to modify

visitation. The case cited by the defendant does not support this proposition, and we have found no other case that supports this novel argument.

[8] The plaintiff also contends that the evidence was insufficient to prove parental alienation because the defendant enjoys a positive relationship with the minor child. Connolly concluded that this is so despite the plaintiff's best efforts. The plaintiff's argument that she should maintain primary physical custody because she has not fully succeeded in her efforts to alienate the minor child from the defendant underscores her inability to grasp the gravity of her conduct.

[9] The plaintiff also claims that the court violated her due process right to access the court by directing the clerk's office not to docket motions that she or her attorney filed after the hearing at issue. Because the plaintiff's argument in this regard consists of a single sentence, we consider this claim inadequately briefed and, thus, decline to address it. See, e.g., *Amity Partners* v. *Woodbridge Associates*, *L.P.*, 199 Conn. App. 1, 8 n.7,     A.3d   (2020).

[10] To the extent that the plaintiff claims generally that the trial court improperly excluded exhibits that she sought to introduce into evidence, such a claim is evidentiary in nature, and, thus, fails to meet the second prong of *Golding*. See, e.g., *In re Antonio M.*, 56 Conn. App. 534, 544, 744 A.2d 915 (2000). To the extent that the plaintiff may be arguing that evidentiary errors implicated her due process right to a fair trial and, thus, rose to the level of a constitutional violation, she has failed to identify specific exhibits that were improperly excluded from evidence. She has thus failed to demonstrate the existence of any evidentiary errors or that any such alleged errors were "crucial, critical [and significant]," and, thus, her claim also fails under the third prong of *Golding*. (Internal quotation marks omitted.) *State* v. *Turner*, 334 Conn. 660, 675, 224 A.3d 129 (2020).

[11] In her reply brief, the plaintiff argues that she "very clearly conveyed to the trial court her desire to present additional evidence." The pages of the record to which she cites in support of this claim immediately precede the discussion regarding how long the plaintiff needed to present her case. The plaintiff was thereafter permitted to testify and introduce exhibits into evidence.

---