******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# ZHE ZHENG *v.* FEIFEI XIA
## (AC 47991)

Moll, Seeley and Flynn, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed from the trial court's judgment denying her postjudgment motion for modification of child support, in which she sought a court order requiring the plaintiff to pay 100 percent of their minor child's private school tuition fees and costs. She claimed, inter alia, that the court erred in not finding the existence of a substantial change in circumstances warranting a modification. *Held*:

The trial court did not abuse its discretion in denying the defendant's motion for modification, as the court's finding of no substantial change in circumstance was not clearly erroneous, the defendant having failed to provide the court with evidence demonstrating that circumstances had changed since a previous court order denying her request for the plaintiff to contribute toward the cost of private school education for their child.

The defendant's claim that the trial court failed to give proper weight to the parties' shared history of prioritizing elite, tuition based education was unavailing, as it was not the province of this court to reweigh the evidence before the trial court or to substitute its judgment in the matter.

The defendant's claims that the trial court improperly failed to find the plaintiff in violation of his obligation to meet with a parenting coordinator to resolve disputes regarding educational matters and that the court failed to consider the regular school field trip costs for the child were also unavailing, as a motion for modification was not the proper procedural vehicle for the defendant to bring these claims.

Argued September 8, 2025—officially released January 20, 2026

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, and tried to the court, *Hon. Stanley Novack*, judge trial referee; judgment dissolving the parties' marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Regan, J.*, denied the defendant's

postjudgment motion for modification of child support, and the defendant appealed to this court. *Affirmed*.

*Feifei Xia*, self-represented, the appellant (defendant).

*Zhe Zheng*, self-represented, the appellee (plaintiff).

*Opinion*

SEELEY, J. The self-represented defendant, Feifei Xia, appeals from the judgment of the trial court denying her postjudgment motion for a modification of the child support obligation of the self-represented plaintiff, Zhe Zheng, in which the defendant sought an order requiring the plaintiff to pay for the private school tuition and fees of the parties' minor son (child). On appeal, the defendant claims that the court improperly failed (1) to find the existence of a substantial change in circumstances warranting a modification, (2) "to give proper weight to the parties' shared history of prioritizing elite, tuition based education," (3) to find the plaintiff in violation of his legal obligation to meet with a parenting coordinator to resolve disputes regarding educational matters pertaining to the child, and (4) to consider the regular school field trip costs for the child. We disagree and affirm the judgment of the court.

The following facts and procedural history, as disclosed by the record and as set forth by this court in a prior appeal involving the parties, are relevant to our resolution of the defendant's appeal. The plaintiff and the defendant are originally from China. After they pursued master's degrees in the United States, they "were married in Stamford on March 28, 2010. Their only child was born in September, 2011. On January 26, 2012, the plaintiff commenced an action for dissolution of marriage on the basis of irretrievable breakdown. At the time the action was commenced, the plaintiff was employed as a hedge fund analyst, and the defendant was a law student. The parties entered into a separation agreement [in July, 2013] that included a detailed parenting plan, which the trial court, *Hon. Stanley Novak*, judge trial

referee, incorporated into the uncontested judgment of dissolution rendered on July 23, 2013. Pursuant to the agreement, the parties share joint legal custody of their child, who is in the primary physical custody of the defendant." *Zheng* v. *Xia*, 204 Conn. App. 302, 303–304, 253 A.3d 69 (2021). Although the agreement contains a provision regarding educational support orders for the child's undergraduate college educational expenses,[1] it contains no provision concerning the child's kindergarten through grade twelve education. Paragraph 2.7 of the agreement provides: "By agreeing to joint legal custody of the minor child, the parties agree that they shall confer in advance with each other on all decisions pertaining to the child's health, welfare, education and religion, with a view toward arriving at a harmonious policy calculated to promote the child's best interest. As such, neither party shall unilaterally arrive at any decisions as to any issues pertaining to the child's health (including medical and dental treatments, and procedures), welfare, education and religion." The agreement further requires the parties to utilize the services of "a parenting coordinator for all issues relating to the parenting of the minor child." "Judge Novak, pursuant to the separation agreement, ordered the plaintiff to pay the defendant unallocated alimony and child support in the amount of $1600 per month until August 2, 2014. On May 13, 2015, the court, *Tindill*, *J.*, ordered the plaintiff to pay the defendant $161 per week in child support. Since that time, the

---

[1] Article VI, paragraph 6.1, of the agreement provides in relevant part: "In accordance with . . . General Statutes § 46b-56c, the parties acknowledge that had they remained an intact family, they would have paid for their child's undergraduate college educational expenses to the best of their abilities. In the event that the parties are unable to agree in the future as to the allocation of the undergraduate college educational expenses, either party may file a motion for a determination of such allocation in the Superior Court pursuant to . . . § 46b-56c, and the parties hereby agree that the [c]ourt has jurisdiction to enter orders accordingly." Paragraph 6.2 of the agreement further provides: "Notwithstanding anything contained herein to the contrary, neither the [p]laintiff nor the [d]efendant shall be responsible for the payment of the child's undergraduate college educational expenses incurred past the child's [twenty-third] birthday."

parties have filed numerous motions for orders of contempt and motions to modify child support." *Zheng* v. *Xia*, supra, 304.

In 2014, the plaintiff remarried. The plaintiff has a daughter with his current wife and two stepchildren from his wife's prior marriage. They currently reside in New Jersey. On May 1, 2017, the plaintiff filed a motion for contempt with respect to the issue of the child's elementary school education, asserting that the defendant had violated the separation agreement by making a uniliteral decision regarding the child's education at a private school. Specifically, the defendant had enrolled the child in prekindergarten at Waterside School, a private elementary school in Stamford for students from prekindergarten to fifth grade. Thereafter, on June 29, 2017, the defendant filed a motion for modification requesting a court order requiring the plaintiff to contribute to the cost of the child's attendance and extracurricular activity expenses at Waterside School.

On December 6, 2017, the parties appeared before the court, *Heller, J.*, for a hearing on the plaintiff's motion for contempt. At that hearing, the plaintiff testified that he did not agree with the defendant to have the child attend private school and was unaware of the defendant's plan to send the child to Waterside School until August, 2016, when he received a package in the mail concerning the child's enrollment information. In a memorandum of decision dated April 4, 2018, the court found the defendant in contempt, concluding that she wilfully had violated the provision of the separation agreement precluding the parties from making unilateral decisions regarding, inter alia, the child's education by enrolling the child in Waterside School without conferring with the plaintiff in advance. The court ordered the defendant not to enroll the child, who was in kindergarten at Waterside School at that time, "in elementary school for the 2018–19 academic year without conferring in advance with the plaintiff pursuant to paragraph 2.7 of the July, 2013 separation agreement," and for the

parties to consult with a parenting coordinator if they were unable to agree on the elementary school that would be best for the child.

On April 22, 2018, the plaintiff sent an email to the defendant in which he stated: "First, I make it clear that I do not prefer private schools, including Waterside [S]chool, for [the child] . . . [who] is starting elementary education a year later than kids of [the] same age that go to public schools. It is only because Waterside [S]chool has [a] different age cutoff for enrollment. In order to keep [the child's] school continuity, which is actually the only reason, I will compromise to let his education remain at Waterside School. It also provides you convenience. Because you made this school decision unilaterally more than two years ago and did not communicate with me until recently, you should continue to be responsible for all the expense[s] incurred from this school. As [the child's] elementary study is delayed by one year, he is also expected to graduate from high school a year later. I will agree to pay child support until the child's [eighteenth] year . . . only." In light of this email, the parties, in effect, reached an agreement about the place of the child's elementary school education but not as to whom would bear the cost, and the child continued to attend Waterside School for most of his elementary school education.

On the issue of payment for that education, the court, *Heller, J.*, held a hearing on the defendant's June 29, 2017 motion for modification, at which it heard testimony from the parties, admitted exhibits into evidence, and took judicial notice of the contents of the court file. On June 29, 2018, the court denied the motion (2018 order), citing *Hardisty* v. *Hardisty*, 183 Conn. 253, 439 A.2d 307 (1981),[2] as being controlling precedent

[2] In *Hardisty*, our Supreme Court held that "courts have the power to direct one or both parents to pay for private schooling, if the circumstances warrant. It is a matter to be determined in the sound discretion of the court on consideration of the totality of the circumstances including the financial ability of the parties, the availability of public schools, the schools attended by the children prior to the divorce and the special

and stating: "The court will not order the plaintiff to contribute to [the child's] private school education where there is no family tradition of attending private school, there is no evidence that the local Stamford schools are inadequate or unsuitable for [the child], the plaintiff's stepchildren attend public school, the defendant enrolled [the child] in . . . Waterside School without the plaintiff's consent, and the plaintiff is opposed to [the child's] attending private school."[3] No appeal was taken from Judge Heller's decision.

On August 31, 2022, the defendant sent the plaintiff an email concerning "some unexpected changes [for the child's] school education for 2022–23." In the email, she explained that their child had applied to private middle schools but was the only child from Waterside School not to be accepted anywhere. As a result, she explained that the child's feelings were "severely hurt," that he was "very upset," and that, after careful consideration, the child would not be returning to Waterside School for fifth grade during the 2022–23 academic year and, instead, would be attending public school in Stamford.

needs and general welfare of the children." (Internal quotation marks omitted.) *Hardisty* v. *Hardisty*, supra, 183 Conn. 262.

[3] With respect to the cost of extracurricular activities, the court noted that the parties' separation agreement, which was executed when the child was twenty-one months old, "provided that until the defendant obtained employment, the plaintiff would be responsible for 80 percent of the cost of [the child's] extracurricular activities, up to a total contribution of $1200 per calendar year, and the defendant would be responsible for 20 percent. . . . Nothing in the July, 2013 separation agreement addressed how the cost of [the child's] extracurricular activities was to be divided after the defendant became employed." After noting that the defendant at that time was employed, the court found that there had been "a substantial change in the financial circumstances of the parties since the orders allocating responsibility for the cost of [the child's] extracurricular activities was entered. Modification of the orders pursuant to General Statutes § 46b-86 is warranted, although not to the extent sought by the defendant. The court finds that it is in [the child's] best interest that both of the parties . . . contribute to the cost of his extracurricular activities." Accordingly, the court ordered the parties to share in those costs, with the plaintiff paying 80 percent of agreed upon extracurricular activities and the defendant paying 20 percent of the cost, with "no cap on the amount that either party shall pay."

The defendant explained further that the child planned to reapply to private middle schools for the 2023–24 academic year. The plaintiff contends in his appellate brief that the defendant, again, made this decision regarding the child's education unilaterally, in violation of the separation agreement.

On February 15, 2023, the defendant sent the plaintiff an email stating that the child was in fifth grade and that the issue of his middle school education needed to be resolved. The plaintiff replied in an email stating that, as they had discussed with a family coordinator, he still had the same position that the child should attend public school, but that if the defendant wanted and was "able to solely afford the financial responsibility of private school, [she was] free to do so." Subsequently, in an email dated May 24, 2023, the defendant notified the plaintiff that the child would be attending middle school at Whitby School, a private school in Greenwich.

On August 21, 2023, the defendant filed the operative motion for modification that is the subject of this appeal (operative motion for modification). In her operative motion for modification, she sought a modification of the 2018 order denying her request to have the plaintiff contribute toward the cost of private school education for their child. Specifically, she sought a court order requiring the plaintiff to pay 100 percent of their child's private school tuition fees and costs. In support of this request, she contended that the circumstances had changed in that the plaintiff had recognized the importance of the child's continuity with private school education when he agreed to the child's attendance at Waterside School and to allowing the child to attend a private middle school, so long as the defendant bore the financial responsibility of private school. The defendant also distinguished *Hardisty* as factually inapposite to the present case and argued that there was a family tradition of attending private schools. Finally, she asserted that the plaintiff had refused to discuss with her alternative options of a comparable public middle school for the child and that

she complied with the parties' separation agreement by providing the plaintiff with abundant notice of her desire and intention to send the child to private middle school via numerous emails exchanged between the parties discussing the issue. The defendant asserted that "the [evidence] clearly show[s] that none of the children from [the plaintiff's] household has ever enrolled into a public school as similar as Stamford Public School[s]. [The plaintiff's] decision to force [their child] to go to the local public school is not for the best interest of [their child] . . . but will only hurt [the child's] interest and destroy his future. Even though later on [the plaintiff] agreed with [the child's] continuity of private schooling for secondary school education, his avoiding financial responsibility to [the child's] education is unreasonable and illegal, and his refusing to consult with a family coordinator to resolve the issues has violated Judge Heller's [2018 order]."

The court, *Regan, J.*, held a hearing on the defendant's operative motion for modification over the course of two days on July 23 and August 29, 2024.[4] During that hearing, both parties appeared in a self-represented capacity and were sworn in. The court admitted a number

---

[4] The record shows that, on July 15, 2024, the defendant filed a supplemental memorandum in support of her operative motion for modification, in which she made various assertions regarding the precollege and college education that she and the plaintiff had received in China, including that the plaintiff was "the product of elite schools that were established as private institutions in China . . . ." She further asserted that the plaintiff should have anticipated that the child would continue his education at a private school following his private education at Waterside School, that Stamford public schools fail to the meet the academic needs of the child, as demonstrated by the child's time attending public school in fifth grade, and that the plaintiff had refused to contribute to any expenses involving the child's schooling and extracurricular activities. This memorandum was filed just prior to the commencement of the hearing on the defendant's operative motion for modification, and the record is unclear as to whether the court was aware of it. Nevertheless, the assertions raised in the memorandum are similar to those raised in the operative motion for modification and addressed during the hearing.

of exhibits into evidence.[5] The parties' positions at the hearing can be summarized as follows.

The defendant asserted that there had been a substantial change in circumstances since the 2018 order. In particular, she stated in her opening remarks that the plaintiff "does not oppose [sending the child] to private school as long as he does not pay any tuition fee," that all of the children in the plaintiff's household attend "highly acclaimed" schools in New Jersey, and that the plaintiff "was the product of elite schools" in China. The defendant testified that the schools that the plaintiff's daughter and stepchildren attend in New Jersey are not comparable to public schools in Stamford, in which a majority of the students who attend do not meet the minimum state standards for academics.[6] In contrast, she further testified that the parties' child excels in mathematics and that Whitby School offers an advanced curriculum tailored to the personal needs of the students. The defendant testified further that another reason why the public schools in Stamford do not meet the child's

---

[5]We note that the parties submitted updated financial affidavits, which the court admitted into evidence, although the focus of the hearing was not on the parties' finances. In her principal appellate brief, the defendant contends that the financial circumstances of the parties have changed significantly, necessitating a modification of the 2018 order. The court made no findings concerning the financial circumstances of the parties. Nonetheless, this factor alone, would not be sufficient to warrant a modification to the 2018 order to require the plaintiff to pay for private schooling for the child. See *Hardisty* v. *Hardisty*, supra, 183 Conn. 262; see also footnote 2 of this opinion.

[6]In support of this contention, the defendant offered into evidence as exhibits reports from a website concerning an educational grading system of various schools, including the ones attended by the plaintiff's children, which had much higher scores than the Stamford public school in the defendant's assigned school district. She acknowledged, however, that the school attended by the plaintiff's daughter is a public school. The court admitted the reports but stated that it was not admitting them "as any official report," and that it was reserving what probative weight it would afford to the evidence. The parties also stipulated that their child is a smart, intelligent boy.

needs is because they do not offer Mandarin Chinese classes, and the child speaks Mandarin.[7]

The defendant offered into evidence a document containing emails exchanged between the parties concerning the issue of the child attending a private middle school. She contended that the emails demonstrated two things: first, that the plaintiff did not object to the child attending private school, only to paying for it, and second, that she adequately informed the plaintiff regarding the decision for the child to attend a private middle school. Although the plaintiff objected, making clear his preference that the child attend public school, the court admitted the evidence, stating that it would review the document. During the course of the discussion regarding the exhibit, the defendant acknowledged that the child is currently enrolled in Whitby School on a full merit scholarship, which covers tuition but excludes fees. She asserted, nonetheless, that it was important for her to file the motion for modification, as the child was in seventh grade at that time and the following year he would have to apply to private high schools because Whitby School ends after eighth grade. Later in her testimony, the defendant confirmed that the child planned to attend private high school, stating, "That's why I'm here for this motion."[8] The court inquired further about

---

[7]On February 20, 2025, the defendant filed a motion requesting that this court take judicial notice that Millburn High School, a public high school in Millburn Township, New Jersey, where the plaintiff resides, offers courses in Mandarin Chinese. This court denied the motion on April 30, 2025.

[8]In light of this statement, it appears that the defendant, to some extent, was seeking an order from the court requiring the plaintiff to contribute toward the child's future education at a private high school, should he be accepted to one. Any such claim for an order requiring the defendant to pay for the expenses of a private high school to which the child has yet to be accepted was not ripe for adjudication by the court. See *Pelc* v. *Southington Dental Associates, P.C.*, 232 Conn. App. 393, 409, 337 A.3d 50 ("[T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . [I]n determining whether a case is ripe, a [trial] court must be satisfied that the case before [it] does not present a hypothetical injury or a claim

whether Whitby School had made a decision regarding the child's upcoming school year, after which the defendant acknowledged that Whitby School, again, would provide the child with a full merit scholarship covering the $50,000 cost of tuition but that the field trip fees were not covered. As a result, she was seeking to have the defendant contribute to the $2700 in such fees.

With respect to the issue of a family history of private school, the defendant testified about the parties' education at elite schools in China and asserted that her child should receive comparable education. She offered into evidence the Laws of the People's Republic of China regarding compulsory education, which she claimed showed that high school and secondary education was not free. The plaintiff objected on the ground that, from elementary grade level to college, he had attended public schools and never went to elite private schools, as the defendant contended. The court, after questioning the relevance of the proffered evidence, admitted the document. On cross-examination, the defendant acknowledged that the plaintiff's other child and two stepchildren attend public school.

During the hearing, the plaintiff did not testify or offer the introduction of any exhibits into evidence regarding his side of the issue. Rather, through the various objections he raised and the colloquies that ensued,[9] and through his closing remarks, he conveyed his position that the child should attend public school and that he had agreed to allow the child to stay in private school as long as the defendant covered the cost so as not to disrupt the child's education, which was consistent with the emails offered into evidence by the defendant. The plaintiff argued that there had been no changes in circumstances since the 2018 order denying the defendant's request for the plaintiff to pay for private school for

contingent upon some event that has not and indeed may never transpire." (Internal quotation marks omitted.)), cert. denied, 352 Conn. 910, 336 A.3d 84 (2025).

[9] As we stated previously in this opinion, the parties were placed under oath at the commencement of the hearing.

the child and finding that there was no family tradition of private school. Since the time of the 2018 order, his other child and two stepchildren had attended public school and continue to do so. The plaintiff also pointed out that their child still lives in the same school zone with respect to Stamford Public Schools, which Judge Heller found in 2018 were not unfit for the child. Finally, the plaintiff refuted the defendant's contention that they had a family history of attending private school, and he explained to the court that the public schools in New Jersey do not offer Mandarin Chinese classes and that his children, instead, "take Sunday school for their Mandarin study . . . ."

At the conclusion of the hearing on August 29, 2024, the court denied the defendant's operative motion for modification, stating: "After viewing the exhibits and listening to the testimony of the parties, I find that your son . . . is obviously a very bright, young man who's applied himself, and whose dedicated mother has come here today seeking an order that his father pay for a private school. [The child] is currently an honor roll student at . . . Whitby School and appears to be flourishing. In reviewing the motion for modification, the largest criteria the court needs to use is if there's a substantial change in circumstances, which would necessitate this sort of a change. In so doing, the court reviewed the [2018] decision and memorandum of decision by Judge Heller. In . . . [Judge Heller's] decision . . . of June 29, 2018, she cites the case of *Hardisty* v. *Hardisty*, which appears at 183 Conn. [253] . . . . It's a 1981 decision where the Supreme Court of Connecticut found that it was an abuse of discretion for the trial court to modify an order to require [a] father to pay a child's expenses at a private secondary school. In the memorandum of decision of Judge Heller, she cites the *Hardisty* decision, and I will quote her: '*Hardisty* is controlling here. The court will not order the plaintiff to contribute to [the child's] private school education when there is no family tradition of attending private school, no evidence that the local Stamford schools are inadequate or unsuitable for

[the child], and if the plaintiff is opposed to [the child's] attending private school.'

"In listening to the testimony of both parties, it seems clear that the plaintiff—the plaintiff has made clear that he is opposed to private education and believes very strongly in public education; in fact . . . all of his children . . . are enrolled in public education. Therefore, I find that, there not being a substantial change in the circumstances of either party, the court will deny the motion for modification, and that's the decision." This appeal followed.

We first set forth our standard of review and applicable legal principles. "[General Statutes §] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is . . . [child support], the applicable provision of the statute is § 46b-86 (a), which provides that a final order for . . . [child support] may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order." (Internal quotation marks omitted.) *Czunas* v. *Mancini*, 226 Conn. App. 256, 263, 317 A.3d 843 (2024). "[W]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and . . . make an order for modification." (Internal quotation marks omitted.) *Laffin* v. *Laffin*, 231 Conn. App.

855, 860–61 n.5, 334 A.3d 565 (2025); see also *Olson* v. *Mohammadu*, 310 Conn. 665, 673, 81 A.3d 215 (2013).

"[I]n determining the threshold inquiry of a substantial change in circumstances, the trial court is limited to considering events arising after the dissolution decree or the most recent modification thereof. *Olson* v. *Mohammadu*, [supra, 310 Conn. 675]; see also *Borkowski* v. *Borkowski*, 228 Conn. 729, 737–38, 638 A.2d 1060 (1994) ([t]o obtain a modification, the moving party must demonstrate that circumstances have changed *since the last court order* such that it would be unjust or inequitable to hold either party to it . . .)." (Emphasis in original; internal quotation marks omitted.) *Laffin* v. *Laffin*, supra, 231 Conn. App. 865.

"[W]e will not disturb the trial court's ruling on a motion for modification of . . . child support unless the court has abused its discretion or reasonably could not conclude as it did, on the basis of the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. . . . *Birkhold* v. *Birkhold*, 343 Conn. 786, 808–809, 276 A.3d 414 (2022)." (Citation omitted; internal quotation marks omitted.) *Lenczewski* v. *Lenczewski*, 229 Conn. App. 752, 760, 328 A.3d 718 (2024). "A finding of a substantial change in circumstances [or the lack of a substantial change in circumstances] is subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Czunas* v. *Mancini*, supra, 226 Conn. App. 263.

We are also "mindful that [i]t is the established policy of the Connecticut courts to be solicitous of

[self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Nonetheless, [a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022). With these principles in mind, we turn to the defendant's claims on appeal.

The defendant first claims that the court improperly failed to find the existence of a substantial change in circumstances warranting a modification. We disagree and conclude, for the following reasons, that the court's finding of no substantial change in circumstances was not clearly erroneous.

First, we note that Judge Heller's 2018 order was based on her determination that *Hardisty* was controlling, and the trial court in the present case deferred to that determination in reaching its decision to deny the operative motion for modification. In *Hardisty*, our Supreme Court addressed the issue of "whether a parent may be compelled to provide private school education for his child." *Hardisty* v. *Hardisty*, supra, 183 Conn. 262. It concluded that "courts have the power to direct one or both parents to pay for private schooling, *if the circumstances warrant*. It is a matter to be determined in the sound discretion of the court on consideration of the totality of the circumstances including the financial ability of the parties, the availability of public schools, the schools attended by the children prior to the divorce and the special needs and general welfare of the children." (Emphasis added; internal quotation marks omitted.) Id. Our Supreme Court noted, however, that it "found no case . . . in which a parent has been compelled to pay the total cost of private schooling to which he objects because of a principled preference for public primary and secondary schooling." Id., 263. It concluded, under the totality of the circumstances of that case, that the

trial court abused its discretion in modifying the child support order to require the father to pay for the child's private school education when there was "no showing of [the] child's special educational or psychological need for private schooling or of the inadequacy, in general or for this child, of the local public schools. There [also was] no showing that, but for this divorce, this child would probably have attended a private school; in fact, the defendant's family history indicates the opposite. There is no showing that the defendant ever agreed to private schooling for his son. To the contrary, the trial court has found, as a fact, that the defendant believes that his son's enrollment at the [private school was] unnecessary and undesirable." Id., 264–65.

In the present case, relying on *Hardisty*, Judge Heller provided three primary grounds for her 2018 order, namely, there was no family history of private schools, the defendant did not demonstrate that the public schools in Stamford are inadequate to meet the needs of the child, and the plaintiff opposed private education for the child. To obtain a modification of the 2018 order, it was incumbent on the defendant to demonstrate a substantial change in circumstances since that court order. See *Czunas* v. *Mancini*, supra, 226 Conn. App. 263. It appears from the record, however, that the defendant, instead, essentially sought to relitigate the bases for Judge Heller's 2018 order, rather than show that circumstances had changed since the time of that order such that a modification was warranted. See *Thomasi* v. *Thomasi*, 181 Conn. App. 822, 842, 188 A.3d 743 (2018) ("the present overall circumstances of the parties must be compared with the circumstances existing at the time of the original award to determine if there has been substantial change" (internal quotation marks omitted)). Also, in doing so, she did not, in large part, rely on events arising after the 2018 order. See *Laffin* v. *Laffin*, supra, 231 Conn. App. 865. For example, in attempting to demonstrate a family history of private schooling, she provided evidence and testimony concerning the plaintiff's prior education in China, Laws of the

People's Republic of China regarding compulsory education, and school grading reports for the schools attended by the plaintiff's daughter and stepchildren and for the school district in Stamford in which the defendant resides with the child. The defendant also did not offer any official documentation establishing that the public schools in Stamford lagged behind other school systems. Moreover, the defendant acknowledged at the hearing that the plaintiff's daughter and stepchildren attend public schools and that, for the one year that the child attended public school in Stamford, he received "the highest of score[s]."

The defendant sought to show a change in circumstances by demonstrating that the plaintiff is no longer opposed to the child attending private school, as evidenced through emails exchanged between the parties. Those emails, however, show that the plaintiff wanted the child to attend public school and that he acquiesced to the child's attending private elementary and middle school so as not to disrupt the child's education, in light of the fact that the defendant already had enrolled the child in those schools without a prior agreement from the plaintiff and because he recognized a need to maintain continuity in the child's education. The emails further demonstrate that the plaintiff remained steadfast in his position that, if the defendant wanted the child to attend private school, she would have to pay for it. Finally, the defendant has confused her desire for her child, who is an intelligent young man as the parties have stipulated, to have the best educational opportunities with a special *need* for the child to attend private school.

In conclusion, the defendant failed to provide the trial court with evidence demonstrating that, since the 2018 order, circumstances had changed such that the plaintiff's support obligation should be modified to require him to contribute to the costs of private school education

for the child. Accordingly, the court's finding of no substantial change in circumstances is not clearly erroneous.

In light of this determination, the defendant's remaining claims on appeal require little discussion. Those remaining claims are that the court failed **(2)** "to give proper weight to the parties' shared history of prioritizing elite, tuition based education," **(3)** to find the plaintiff in violation of his legal obligation to meet with a parenting coordinator to resolve disputes regarding educational matters pertaining to the child, and **(4)** to consider the regular school field trip costs for the child.

"It is well established that a decision to credit certain evidence over other evidence is exclusively within the province of the trial court. . . . *Weaver* v. *Sena*, 199 Conn. App. 852, 860, 238 A.3d 103 (2020); see also *Woodbridge Crossing Condominium Assn., Inc.* v. *Ferguson*, 229 Conn. App. 99, 104, 325 A.3d 1205 (2024) ([i]t is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony . . .); *M. C.* v. *A. W.*, 226 Conn. App. 444, 466, 319 A.3d 183 (2024) (Insofar as the defendant invites us to reconsider the evidence that was before the court, [w]e note that it is not the function of this court to review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . Thus, [a] mere difference of opinion or judgment cannot justify our intervention.). Likewise, it is not the province of this court to reweigh the evidence before the court or to substitute our judgment in this matter. *F. S.* v. *J. S.*, 223 Conn. App. 763, 794, 310 A.3d 961, cert. denied, 350 Conn. 903, 323 A.3d 344 (2024); see also *In re Blake P.*, 222 Conn. App. 693, 707, 306 A.3d 1130 (2023) ([a]lthough there may be evidence in the record that would support the [plaintiff's] position, it is not the role of [an appellate] court to examine that evidence and substitute our judgment for that of the trial court)." (Internal quotation marks omitted.) *In re Dynastie D.*, 233 Conn. App. 662, 683–84, 341 A.3d 331, cert.

granted on other grounds, 353 Conn. 905, 342 A.3d 239 (2025). Accordingly, the defendant's claim concerning the weight the court afforded to the evidence concerning the parties' education necessarily fails.

The defendant's claim that the court improperly failed to find the plaintiff in violation of his legal obligation to meet with a parenting coordinator to resolve disputes regarding educational matters pertaining to the child is equally unavailing. The defendant did not request that relief in her operative motion for modification, and the issue before the court in its consideration of the operative motion for modification was whether a substantial change in circumstances had occurred since the 2018 order declining to require the plaintiff to contribute toward the private school educational costs of the parties' child. Moreover, a motion for modification is not the proper procedural vehicle for the defendant to seek redress for the plaintiff's alleged failure to comply with the term of the parties' separation agreement requiring the parties to meet with a family coordinator to resolve disputes. See Practice Book § 25-27; see also *O'Bryan* v. *O'Bryan*, 262 Conn. 355, 358 n.2, 813 A.2d 1001 (2003).

We reach the same conclusion with respect to the defendant's claim that the court improperly failed to consider the regular school field trip costs for the child. In her operative motion for modification, the defendant did not seek a modification of the 2018 order in terms of its allocation of the responsibility for paying the child's extracurricular activity fees to which the parties had agreed in their separation agreement.[10] See footnote 3

---

[10] In his appellate brief, the plaintiff contends that he is not responsible for any field trip fees at a private school that he never agreed to allow the child to attend. The issues of whether the plaintiff's responsibility to contribute toward the extracurricular activity fees of the child, as set forth in the 2018 order; see footnote 3 of this opinion; extends to such fees incurred at a private school, or whether the field trip fees sought by the plaintiff qualify as extracurricular fees under the parties' agreement, were not decided by the court in light of its finding of no substantial change in circumstances. Those issues, therefore, are not properly before this court and we decline to address them. See *Forestier* v. *Bridgeport*, 223 Conn. App. 298, 313, 308 A.3d 102 (2024) (as general matter, "Connecticut appellate courts will not address issues not decided by the trial court" (internal quotation marks omitted)).

of this opinion. To the extent that the defendant seeks to have the plaintiff pay his portion of those fees because he has failed to do so, a motion for modification is not the proper procedural vehicle to do so.

As we have stated in this opinion, "before the court may modify . . . [a child support order] pursuant to § 46b-86, it must make a threshold finding of a substantial change in circumstances with respect to one of the parties." (Internal quotation marks omitted.) *Mountain* v. *Mountain*, 189 Conn. App. 228, 232, 206 A.3d 802 (2019). Because the court in the present case found no substantial change in circumstances, and that finding is not clearly erroneous, the court did not abuse its discretion in denying the defendant's operative motion for modification.

The judgment is affirmed.

In this opinion the other judges concurred.